## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **TEAM KENNEDY, LIBERTARIAN PARTY OF ILLINOIS, ROBERT F. KENNEDY JR., WILLIAM REDPATH, and ANGEL OAKLEY** | : : : : | |
| | : | **No. 24 – cv – 7027** |
| **Plaintiffs,** | : : | |
| **vs.** | : : | |
| **ILLINOIS STATE BOARD OF ELECTIONS, and, BERNADETTE MATTHEWS,** in her official capacity as the Executive Director of the Illinois State Board of Elections, | : : : : : | |
| **Defendants.** | : | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Team Kennedy, Libertarian Party of Illinois, Robert F. Kennedy Jr.

William Redpath and Angel Oakley ("Plaintiffs"), by and through their

undersigned legal counsel, file this Complaint against the Illinois State Board of

Elections and its Executive Director Bernadette Matthews ("Defendants"), and

allege as follows:

### INTRODUCTION

1.      Plaintiffs seek emergency preliminary injunctive relief and permanent

injunctive and declaratory relief prohibiting Defendants from enforcing those

provisions of 10 ILCS 5/10-4, without prior notice, that prohibit ballot access

1

petition circulators who prior circulated ballot access petitions for political party candidates in other states from circulating ballot access petitions for independent presidential candidates in Illinois for the 2024 election cycle, all in violation of the First and Fourteenth Amendments to the United States Constitution.

2.      Plaintiffs also seek permanent injunctive and declaratory relief prohibiting Defendants from enforcing those provisions of 10 ILCS 5/10-4, to prohibit petition circulators who circulated ballot access petitions for Republican, Democratic, or other political party candidates within Illinois for the Illinois primary from circulating for independent and third-party presidential candidates who did not seek a major party's primary nomination, in violation of the First and Fourteenth Amendments to the United States Constitution.

3.      Plaintiffs seek permanent injunctive and declaratory relief prohibiting Defendants from striking otherwise valid ballot access petitions for the sole reason that a notary public failed to properly execute a notarization on a ballot access petition, all in violation of the First and Fourteenth Amendments to the United States Constitution.

4.      Plaintiffs seek permanent injunctive and declaratory relief declaring that the 90-day circulation period for ballot access petitions for independent and new political party presidential candidates impairs rights guaranteed to the

Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

5.     Plaintiffs seek permanent injunctive and declaratory relief, holding that, as operating in tandem with other restrictions, either the 25,000 valid petition signatures required to be collected by independent and new political party candidates to secure ballot access is unconstitutional <u>or</u> the private challenge "objector" system imposed on ballot access petitions filed with Defendants is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

6.     Plaintiffs also seek permanent injunctive and declaratory relief declaring the requirement imposed on independent and new political party presidential candidates to name presidential electors as a condition precedent to the circulation of ballot access petitions impairs rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## <u>JURISDICTION & VENUE</u>

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 2201, because the matters in controversy arise under the Constitution and laws of the United States, as they concern the deprivation, under color of state law, of rights secured to Plaintiffs under the Constitution of the

United States of America, and because they are proper subjects for declaratory judgment.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this district and in Illinois, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district; or, in the alternative, because Defendant is subject to the Court's personal jurisdiction in this district with respect to this action because the Defendants maintain an office in this district.

## PARTIES

9.      Team Kennedy is the principal campaign committee to elect Robert F. Kennedy Jr. to the office of President of the United States at the November 5, 2024 general election.  Team Kennedy is a registered campaign committee with the Federal Elections Commission.  Team Kennedy filed FEC Form 1, Statement of Organization on April 5, 2023.  Team Kennedy's FEC Committee I.D. Number is C00836916.  In order to qualify for Illinois's 2024 general election ballot for the office of President of the United States, Team Kennedy was required to collect a minimum of 25,000 valid signatures from registered voters on nominating petitions naming both Mr. Kennedy and a slate of presidential electors in just 90 days.  By state law, Team Kennedy was not permitted to circulate ballot access petitions until after the Republican and Democratic parties concluded the circulation of their own

ballot access petitions for their primary election contests. Team Kennedy filed nominating petitions containing 65,931 signatures with Defendants on or about June 24, 2024. Team Kennedy was thus compelled to spend approximately $600,000.00 on professional petition circulators in order to collect the required number of ballot access signatures in the short period of time permitted. The address for Team Kennedy is: 124 Washington Street, STE 101, Foxborough, MA 02035.

10. The Libertarian Party of Illinois is the Illinois affiliate of the Libertarian National Committee and is required to circulate ballot access petitions in order to secure ballot access in Illinois for every election cycle. The collection of 25,000 valid petition signatures in just 90 days requires the Libertarian Party of Illinois to contract the services of professional petition circulators who have the economic and professional ambition to collect large numbers of valid signatures in a short period of time that volunteers may not always reliably possess. Under Illinois law, the Libertarian Party of Illinois is not permitted to use any professional petition circulators who first circulated ballot access petitions for a Republican, Democratic, or other political party candidate in the primary election. As a result, the Libertarian Party of Illinois is forced to use only those professional petition circulators that a Republican, Democratic, or other political party primary candidate did not want to employ during the same election year. The Libertarian

Party of Illinois has been forced to spend nearly all of the campaign contributions it raises just to secure ballot access thereby depleting funds available to properly contest the election. The costs of notarizing thousands of ballot access petition pages every election cycle imposes a severe burden on the finances of the Libertarian Party of Illinois. The cost of defending ballot access petition as part of the private challenge "objector" system imposed in Illinois imposes a severe economic burden on the Libertarian Party of Illinois. William Redpath is the chair of the Libertarian Party of Illinois whose address is 1301 Westley Lane, West Dundee, Illinois, 60118.

11. Robert F. Kennedy Jr. is an announced independent candidate for the office of President of the United States seeking access to Illinois' 2024 general election ballot for the presidential elections to be contested on Tuesday, November 5, 2024. Mr. Kennedy is domiciled at 84 Croton Lake Road in Katonah, New York.

12. William Redpath is the chair of the Libertarian Party of Illinois and has circulated ballot access petition on behalf of the Libertarian National Committee in states across the country, including the state of Illinois. William Redpath is recognized as one of the leading experts on ballot access in the United States and is co-editor of the publication Ballot Access News which chronicles the difficulty and many restrictions imposed on independent and minor party

candidates in their effort to secure ballot access on an annual basis. William Redpath assisted Team Kennedy in their defense of the ballot access petitions filed on behalf of Robert F. Kennedy Jr. with Defendants. William Redpath is an Illinois voter who resides at 1301 Westley Lane, West Dundee, Illinois 60118.

13.     Angel Oakley is an Illinois voter and a presidential elector pledged to cast her vote in the electoral college for the Kennedy/Shanahan ticket and named on the ballot access petition filed on behalf of Mr. Kennedy and Ms. Shanahan. The Defendants failed to serve a copy of a valid objector's petition seeking to challenge her nomination papers as required under Illinois law, 10 ILCS 5/10-8.

## **RELEVANT FACTS**

14.     To qualify for the Illinois statewide general election ballot, an independent candidate or new political party must circulate ballot access petitions to collect signatures equal to at least 25,000 valid signatures of registered voters and file them with Defendants before the expiration of the 90-day period of time in which independent and new political party candidates may circulate ballot access petitions in Illinois.

15.     Petition sheets typically contain ten (10) signatures per petition sheet.

16.     Independent and new political party presidential candidates name their presidential and vice presidential electors, and their presidential and vice

presidential candidates on the Illinois ballot access petition before the petition may be circulated to voters.

17.     Independent and new political parties must name their presidential electors and disclose their presidential and vice presidential candidates on their petition sheets many months before the Republican and Democratic presidential conventions at which established party candidates are selected by delegates, in order to collect ballot access petition signatures, all in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

<u>ILCS 5/10-4 "Dual Circulator" Restriction is Unconstitutional</u>

18.     Illinois is the only state in the Union which prohibits petition circulators, including professional petition circulators, from circulating for candidates of different political parties and/or independent candidates in the same election cycle.

19.     10 ILCS 5/10-4 provides in relevant part:

   Provided, further, that no person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election.

20.     In addition, the Illinois election code defines a political party solely based on attaining in excess of 5% of the vote at the last general election within the state of Illinois.  No notice is provided that 10 ILCS 5/10-4 purports to apply to

any out-of-state circulator conduct on behalf of political parties that are not recognized as such by Illinois statute (i.e., the Constitution Party of Pennsylvania if it is not a recognized political party in Illinois, such that the provisions of 10 ILCS 5/10-4 should not apply, and certainly no notice of this purported extended application is provided from the wording of the statutory provision).

21.     There is no statutory provision, and therefore, no notice provided to any Plaintiff that the "dual circulator" provisions of 10 ILCS 5/10-4 can be extended to exclude a petition circulator, and invalidate all otherwise valid petition signatures recorded on an Illinois ballot access petition, for the sole reason the circulator circulated a ballot access petition for a Republican, Democrat, or other political party outside the state of Illinois.

22.     For the first time in history, Defendants are currently entertaining objections to Mr. Kennedy's ballot access petitions seeking to extend 10 ILCS 5/10-4 to prohibit independent and new political party candidates from using petition circulators who circulated for a Republican, Democratic, or other political party candidate in any state – seeking to extend the reach of ILCS 5/10-4 beyond the territorial jurisdiction of Illinois.

23.     Objectors to Plaintiff Kennedy's ballot access petitions have filed unique "global" objections to over 2,031 of the roughly 9,100 petition pages for the sole reason that the petition circulator for those petition pages circulated ballot

9

access petitions outside the state of Illinois for a Republican, Democratic, and/or other political party candidates. These unique 2,031 "global" objections based on an extension of 10 ILCS 5/10-4 to out-of-state circulation conduct means that, if sustained by Defendants 10 ILCS 5/10-4 will invalidate a maximum of 20,031 otherwise valid petition signatures on Plaintiff Kennedy's Illinois ballot access petition.

24.     A "global" objection to a petition page is an objection which impacts the alleged validity of every signature on a petition page without regard to the actual validity of each individual signature and seeks to "strike" that entire page.

25.     In addition to a "global" objection, objections to individual signatures are permitted in Illinois. Individual signature objections, if sustained, only invalidate a single signature. A "global" objection renders every signature on a petition page invalid and has a disproportionate impact on the validity of a ballot access drive.

26.     The extension of the ban on petition circulators who circulate for Republican, Democratic, or other political party candidates outside the state of Illinois imposes a unique and severe impairment of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution on independent and new political party presidential candidates because it prevents them from hiring professional petition circulators if any of them have previously circulated for

any Republican, Democratic, or other political party candidate in another state during the election cycle. Extension of 10 ILCS 5/10-4 to ban petition circulators based on out-of-state circulation efforts requires unique staffing and segregation of petition circulators just for the state of Illinois by national presidential candidates seeking ballot access in Illinois, particularly since there is no circulator registration system or database that identifies circulators of political parties.

27.  Banning independent and new political party candidates from contracting for the services of petition circulators who circulated for Republican, Democratic, or other political party candidates in other states advances no legitimate state interest or regulatory purpose and is unconstitutional under any application of the Supreme Court's balancing test to determine the constitutionality of a ballot access restriction as articulated in *Anderson v. Celebrezze*, 460 U.S. 780 (1983).

28.  Extension of 10 ILCS 5/10-4 to ban petition circulators who previously circulated ballot access petitions for Republican, Democratic, or other political party candidates in other states, from circulating ballot access petitions for independent and new political party presidential candidates within Illinois is a severe burden on rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution which is not narrowly tailored to advance any, let alone a compelling governmental or regulatory interest.

11

29.     Banning independent and new political party candidates from

contracting for the services of petition circulators, who previously circulated for

Illinois Republican, Democratic, or other political party primary candidates who

are not seeking to switch from their party to an independent ballot access effort

advances no legitimate state interest or regulatory purpose as no harm to an Illinois

political party occurs when the candidates do not defect from their political party

by seeking an independent run after having first sought their political party's

primary nomination.

30.     Illinois prohibits petition circulators from exercising their right under

the First and Fourteenth Amendments to engage in speech and association which

advances their support for broad ballot access for candidates of different political

thought so that all voters might find on the ballot a candidate for whom they might

wish to support.

31.     Illinois permits voters the right to switch between political parties

during an election year – with no political party registration scheme or lock-in

provisions – but denies that right to petition circulators.

32.     In 2024, the period during which independent and new political party

candidates may circulate ballot access petitions runs from March 26, 2024, and

June 24, 2024.  All ballot access petitions for independent and new political party

candidates must be filed with Defendants no later than June 24, 2024.  10 ILCS 5/10-4, 10-2, 10-6.

33.    Ballot access petitions for Republican and Democratic primary election candidates may be circulated between September 5, 2023, and filed no later than December 4, 2023, for non-presidential candidates and October 7, 2023, and January 5, 2024, for Republican and Democratic candidates for President of the United States and their delegates.

34.    Because ballot access petitions for Republican and Democratic primary candidates must be circulated and filed before independent and new political party presidential candidates are permitted to circulate their own ballot access petitions, Republican and Democratic primary candidates get to select the best professional petition circulators for themselves, reducing the pool of available circulators and relegating to independent and minor party presidential candidates the proverbial "runts" and least desirable professional petition circulators to collect the astronomical number of petition signatures in the short amount of time demanded for their ballot access for the general election, all in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

35.    Application of the ban on professional petition circulators from circulating ballot access petitions for more than one political party or independent

candidate in Illinois severely impair the clearly-established rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution under the Supreme Court's seminal decision in *Meyer v. Grant*, 486 U.S. 414 (1988), which established the right to hire professional petition circulators to collect ballot access petitions.

36.     Professional petition circulators are not always members of a candidate's political party for whom they circulate and their switching from one candidate to another fails to harm any cognizable state interest sufficient to sustain the challenged restriction.

37.     Illinois provides independent and new political party statewide candidates just 90 days to collect the required 25,000 valid petition signatures to secure ballot access.  *See* 10 ILCS 5/7-10.

38.     The 25,000 valid ballot access petition signatures which must be collected and timely filed in just 90-days by independent and minor party presidential candidates require the hiring of professional petition circulators.

Private Challenge "Objector" System to
Ballot Access Petitions is Unconstitutional

39.     Ballot access petitions filed with Defendants are deemed valid unless a private party files objections within 5 business days after the last day to file the ballot access petitions.

40.     The 25,000 valid ballot access petition signatures which must be collected and timely filed in just 90 days in combination with all the other ballot access restrictions giving the opponents of a candidate a myriad number of objections to invalidate otherwise valid petition signatures and the costs associated with defending ballot access petitions resulting from the private challenge process in Illinois imposes a severe burden on rights guaranteed to Plaintiffs in violation of the First and Fourteenth Amendments to the United States Constitution.

41.     The private challenge system, whereby independent and new political party candidates must pay to defend their own ballot access petitions in the face of objections from Republican, Democratic, or other political party voter objections, in combination with the number of signatures required to be collected and defended to secure ballot access imposes a severe burden on rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

42.     The private challenge system to ballot access petitions imposes significant and severe economic costs on independent and new political party candidates seeking to defend their ballot access petitions such that it constitutes an unconstitutional ballot access fee on independent and minor political candidates.

<u>Statewide Ballot Access Circulation Period Unconstitutional</u>

43.     Statewide independent and new political party presidential candidates must collect a minimum of 25,000 valid petition signatures in just 90 days to secure ballot access.

44.     In 2024, the period during which independent and new political party candidates may circulate ballot access petitions runs from March 26, 2024, and June 24, 2024.  All ballot access petitions for independent and new political party candidates must be filed with Defendants no later than June 24, 2024.  10 ILCS 5/10-4, 10-2, 10-6.

45.     Ballot access petitions for Republican and Democratic primary election candidates may be circulated between September 5, 2023, and filed no later than December 4, 2023, for non-presidential candidates and October 7, 2023, and January 5, 2024, for Republican and Democratic candidates for President of the United States and their delegates.

46.     Independent and new political party presidential candidates are permitted the same number of days to collect ballot access petition signatures even though they are required to collect 500% more signatures over the same period of time to circulate their ballot access petitions (5,000 valid signatures for Republican and Democratic presidential primary candidates vs. 25,000 valid signatures for independent and new political party presidential candidates).

47.     Requiring independent and new political party presidential candidates to collect 500% more signatures over the same period of time is a severe impairment of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

48.     The large number of petition signatures required to be collected by independent and new political party presidential candidates in combination with the short period of time to collect signatures effectively prevents the ability of independent and new political party candidates to be able to use volunteer petition circulators as the main force to collect the required number of signatures necessary to secure statewide ballot access.

49.     The short 90 day period of time to collect statewide ballot access petition signatures imposes the requirement on independent and newds political party candidates to hire professional petition circulators to secure the required number of signatures to secure statewide ballot access.

50.     The cost of contracting the services of professional petition circulators for a successful statewide petition drive in Illinois costs approximately $350,000.00 to $600,000.00.

51.     The economic cost imposed on independent and new political party candidates to collect the required number of valid ballot access petition signatures to secure statewide ballot access imposes a severe burden on rights guaranteed to

Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

52.     There is no reason why independent and new political party candidates cannot be permitted to begin the circulation of their ballot access petitions at the same time Republican and Democratic primary candidates are permitted to circulate their petitions.  The extended period of time to circulate ballot access petitions for independent and new political party will permit such candidates to use more volunteer petition circulators, reducing the cost of securing statewide ballot access and placing independent and new political party candidates, and place them on the same footing in securing the services of professional petition circulators without fear that they had previously circulated for Republican, Democratic, or other political party candidates rendering all signatures invalid under 10 ILCS 5/10-4.

53.     Permitting independent and new political party presidential candidates to begin circulating their ballot access petitions on the same day Republican and Democratic party presidential candidates may begin to circulate their ballot access petitions will both impose equality in the contracting of professional petition circulators under ILCS 5/10-4 and permit independent and new political party presidential candidates sufficient time to collect the increased number of signatures they are required to collect to secure ballot access.

54.     Preventing the circulation of independent and new political party ballot access petitions until after the Republican and Democratic party candidates conclude the circulation of their primary ballot access petitions fails to narrowly advance any legitimate state interest or regulatory purpose.

Notarization Requirement of<br>Ballot Access Petitions Unconstitutional

55.     The notarization requirement for each ballot access petition page serves no legitimate state or regulatory interest because any ballot access petition signature can be challenged and reviewed against the voter registration database for validity, such that the notarization requirement serves no actual state interest or regulatory purpose.

56.     Mr. Kennedy's 2024 ballot access petition includes over 9,100 pages, containing 65,931 voter signatures in the hopes 25,000 will survive the costly private challenge gauntlet.

57.     Each notarization of a petition page cost at least $5.00 per petition page, costing Plaintiff Kennedy over $45,000.00 in notarization costs for his ballot access petition in 2024.

58.     The notarization requirement for ballot access imposes an unconstitutional ballot access fee on independent and new political party candidates because notarization fees impose significant costs in light of the number

of pages needed to collect the required number of ballot access petition signatures – all at about $5.00 per page.

59.     Notarization imposes significant costs on Plaintiff Libertarian Party of Illinois to the amount of several thousand dollars every election cycle where Plaintiff Libertarian Party of Illinois nominates a statewide candidate.

60.     The notarization requirement for each and every ballot access petition page imposes an even more severe burden on speech protected under the First and Fourteenth Amendments to the United States Constitution because if a notary either fails to execute his/her job properly, or fails to instruct the petition circulator on how to properly execute the required declaration he/she is attesting, the work of a failed notary will invalidate all signatures on those sheets, or up to ten (10) of Plaintiffs' otherwise valid ballot access petition signatures from Illinois voters who did nothing improper.

61.     The notarization requirement acts as a trip wire – especially for large statewide ballot access petitions – providing objectors an avenue to invalidate thousands of otherwise valid petition signatures, infringing on the protection of what the United States Supreme Court deems "core political speech" afforded the highest level of protection under the First and Fourteenth Amendments to the United States Constitution.

62.     The invalidation of an otherwise valid petition signature of an Illinois voter recorded on a ballot access petition just because a third-party notary failed in his or her task to properly notarize a ballot access petition page serves no legitimate state interest or regulatory purpose especially under a system where a review of the voter's petition signature has been verified by an actual Records Examination process.

63.     The notarization requirement imposes a severe burden on protected speech which is not narrowly tailored to advance a compelling or even a legitimate regulatory state interest.

64.     The identity of a petition circulator is a proper interest of the state.

65.     The identity of the petition circulator can be provided without the need for a notarization requirement.

66.     The nature of ballot access validation imposes on the circulator the desire and requirement to provide their proper identity and contact information, because if they do not, every signature they collect can be stricken as invalid as part of the ballot access validation process.  Accordingly, notarization provides no additional safeguard sufficient to warrant the burden placed on protected speech under the First and Fourteenth Amendments to the United States Constitution.

67.     States across the country have successfully abandoned notarization requirements for ballot access petitions.

68.     Defendants refuse to entertain any constitutional challenge to ballot access rules as part of their review of Plaintiff Kennedy's ballot access petition.

69.     Only evidence produced to Defendants during the electoral board proceeding may be made part of subsequent judicial review of Defendants' adjudication of a challenge to a ballot access petition.

70.     Defendants are set to certify Plaintiffs, Team Kennedy and Kennedy's, Illinois ballot access petition on August 23, 2024.

71.     Plaintiffs' challenge to the extension of 10 ILCS 5/10-4 to ban petition circulators in Illinois who have previously circulated ballot access petitions for Republican, Democratic, or other political party candidates in states other than Illinois is dispositive of the validity of the ballot access petition filed by Plaintiff Team Kennedy on behalf of Plaintiff Kennedy.

72.     Defendants, at all relevant times, acted or failed to act in their capacity as state actors as that term applied to 42 U.S.C. § 1983.

73.     Plaintiffs have no other adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
(As-Applied First & Fourteenth Amendments to the United States Constitution)

74.     Plaintiffs reassert each preceding paragraph as if set forth fully herein.

75.     Application of 10 ILCS 5/10-4 to ban circulators from circulating for Illinois independent and new political party candidates when the circulator

previously circulated for a Republican, Democratic, or other political party candidate outside the state of Illinois deprives independent and new political party candidates access to the best professional petition circulators from circulating ballot access petitions in the state of Illinois.

76.     The denial of the right of independent and new political parties to contract for the services of the best and most efficient professional petition circulators just because they previously circulated ballot access petitions for a Republican, Democratic, or other political party primary candidate outside the state of Illinois imposes a severe burden on rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

77.     Application of 10 ILCS 5/10-4 to ban circulators from circulating for Illinois independent and new political party candidates when the circulator previously circulated for a Republican, Democratic, or other political party candidate outside the state of Illinois fails to narrowly advance any legitimate state interest or regulatory purpose.

78.     Accordingly, application of 10 ILCS 5/10-4 to ban circulators from circulating for Illinois independent and new political party candidates when the circulator previously circulated for a Republican, Democratic, or other political party candidate outside the state of Illinois impairs rights guaranteed to Plaintiffs

under the First and Fourteenth Amendments to the United States Constitution for
which Plaintiffs seek their requested relief.

## COUNT II
(As-applied First & Fourteenth Amendments to the United States Constitution)

79.     Plaintiffs reassert each preceding paragraph as if set forth fully herein.

80.     Application of 10 ILCS 5/10-4 to ban circulators from circulating for
Illinois independent and new political party candidates when the circulator
previously circulated for a Republican, Democratic, or other political party
candidate inside the state of Illinois deprives independent and new political party
candidates access to the best professional petition circulators from circulating
ballot access petitions within the state of Illinois.

81.     The denial of the right of independent and new political party to
contract for the services of the best and most efficient professional petition
circulators just because they prior circulated ballot access petitions for a
Republican, Democratic, or other political party primary candidate within the state
of Illinois imposes a severe burden on rights guaranteed to Plaintiffs under the First
and Fourteenth Amendments to the United States Constitution.

82.     Application of 10 ILCS 5/10-4 to ban circulators from circulating for
Illinois independent and new political party candidates when the circulator
previously circulated for a Republican, Democratic, or other political party
candidate within the state of Illinois fails to narrowly advance any legitimate state

interest or regulatory purpose when the primary candidate for whom the petition circulator circulated does not seek to leave his/her political party in order to injure the party system in Illinois.

83.     Accordingly, application of 10 ILCS 5/10-4 to ban circulators from circulating for Illinois independent and new political party candidates when the circulator previously circulated for a Republican, Democratic, or other political party candidate within the state of Illinois impairs rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs seek their requested relief.

## COUNT III
(Equal Protection Clause of the Fourteenth Amendment
to the United States Constitution)

84.     Plaintiffs reassert each preceding paragraph as if set forth fully herein.

85.     Because Republican and Democratic primary election candidates get to circulate their ballot access petitions prior to independent and new political party candidates, primary election candidates of the two major political parties get the first pick of professional petition circulators, reducing the pool of available circulators and denying to independent and new political party candidates any petition circulator that Republican and Democratic primary election candidates like to use for their own petitions, as a direct and proximate result of 10 ILCS 5/10-4.

86. Providing Republican and Democratic candidates the freedom to choose any professional petition circulator for their own petitions, largely free from the threat that they had circulated for another primary candidate and free from invalidation under 10 ILCS 5/10-4, while denying the same freedom of choice to independent and new political party candidates violates the Equal Protection Clause of the Fourteenth Amendment.

87. 10 ILCS 5/10-4 exposes independent and new political party candidates to a larger threat that their circulators may have engaged in conduct in violation of 10 ILCS 5/10-4 and the subsequent invalidation of their ballot access petition signatures than for Republican and Democratic party primary candidates.

88. The circulation of ballot access petitions is core political speech and a fundamental right to which the protections of the Equal Protection Clause of the Fourteenth Amendment attach.

89. Accordingly, Defendants' enforcement of 10 ILCS 5/10-4 violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs seek their requested relief.

## COUNT IV
(Due Process Clause of the Fourteenth Amendment
to the United States Constitution)

90. Plaintiffs reassert each preceding paragraph as if set forth fully herein.

91.     No notice has been provided to Plaintiffs with respect to the application of 10 ILCS 5/10-4 to ban circulators from circulating for Illinois independent and new political party candidates when the circulator previously circulated for a Republican, Democratic, or other political party candidate outside the state of Illinois, and there is no circulator registration system or database that identifies circulators of political party petitions.

92.     The circulation of ballot access petitions involves interactive communicative speech protected under the First and Fourteenth Amendments to the United States Constitution which is a fundamental right to which Due Process protections attach.

93.     The failure to provide notice to Plaintiffs that 10 ILCS 5/10-4 excludes petition circulators who circulated for Republican, Democratic, or other political party presidential candidates outside Illinois from circulating Plaintiffs' ballot access petitions impairs rights guaranteed to Plaintiffs under the Due Process Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs seek their requested relief.

## COUNT V
(First & Fourteenth Amendment to the United States Constitution)

94.     Plaintiffs reassert each preceding paragraph as if set forth fully herein.

95.     The requirement imposed to notarize each and every ballot access petition page by the person who circulated the ballot access petition imposes

significant costs and serves no real purpose where Illinois provides a statutory process to challenge and review ballot access petition signatures against voter registration records.

96.     Validity and invalidity is not governed by the mere fact that a petition circulator executes the required declaration in the presence of a notary public.

97.     The identity and contact information of the petition circulator is a proper requirement which can be required and failure of a circulator to provide such information can be made to result in the invalidity of petition signatures – similar to what happens if a notary public fails to properly execute the witness statement or if the information is discovered to not be accurate.

98.     Therefore, the requirement to secure the execution of a ballot access petition page by a notary public is not narrowly tailored to serve an actual state interest or regulatory purpose sufficient to sustain the impairment of rights guaranteed to Plaintiffs and voters who sign the ballot access petition under the First and Fourteenth Amendments to the United States Constitution, because all required information needed from petition circulators can be mandated, without a notary, and the punishment for failure to do so can be the same without the need to use a notary public – but the threat that a third-party mistake (i.e., the notary public) can be removed from invalidating otherwise valid petition signatures.

99.     Furthermore, the cost of securing a notary public for each and every ballot access petition page imposes significant costs on independent and new political party presidential candidates amounting to an unconstitutional filing fee.

100.    Accordingly, the notarization requirement imposed on independent and new political party presidential candidate ballot access petitions imposes a severe burden on rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which the Defendants cannot demonstrate is narrowly tailored to advance a compelling governmental interest for which Plaintiffs seek their requested relief.

## COUNT VI
(Equal Protection Clause of the Fourteenth Amendment
to the United States Constitution)

101.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

102.    The requirement imposed on independent and new political party presidential candidates to name their presidential electors before they may circulate ballot access petition imposes a requirement not imposed on presidential candidates for the Republican and Democratic parties.

103.    Reducing the time period to select presidential electors on pain of not being permitted to circulate ballot access petitions imposes an unequal selection process between major party presidential candidates and independent and new political party presidential candidates.

104.   Major political party presidential candidates are not required to name their presidential electors on their primary election ballot access petitions; delegates select their party electors at their conventions and they are certified to the State Board of elections without the risk of private objection challenges.

105.   Major political party presidential candidates are not required to select their presidential electors until after the conclusion of their national nominating conventions, and then the electors are certified to the State Board.

106.   The names of Presidential electors are replaced with the names of their pledged candidates upon the general election ballot.

107.   No state interest is advanced by requiring independent and new political party presidential candidates to name and publish their presidential electors on ballot access petitions.

108.   Accordingly, the requirement for independent and new political party presidential candidates to name and publish the names of the presidential electors on their ballot access petitions impairs rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## **COUNT VII**
(First & Fourteenth Amendments to the United States Constitution)

109.   Plaintiffs reassert each preceding allegation as if set forth fully herein.

110.   Defendants' enforcement of the same 90-day circulation period that established party primary candidates have to circulate their ballot access petition on independent and new political party ballot access petitions, despite the 500% increase in the number of ballot access petition signatures required to be collected by independent and new political party statewide candidates imposes a severe burden on rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.

111.   The 90-day period imposed on the circulation of independent and new political party ballot access petitions is not narrowly tailored to advance a compelling governmental interest.

112.   While Defendants have the right to enforce the state's legitimate interest in preventing frivolous candidates from appearing on Illinois' general election ballot, that interest is fully protected by the requirement that statewide independent and new political party candidates collect 25,000 valid ballot access petition signatures.

113.   The 90-day circulation period is thus not necessary nor narrowly tailored to protect the state's interest against the appearance of frivolous candidates to appear on the general election ballot.

114.   Accordingly, the short 90-day circulation period imposed on statewide independent and new political party candidates to collect 500% more ballot access

signatures than imposed on major party primary candidates imposes a severe

burden on rights guaranteed under the First and Fourteenth Amendments to the

United States Constitution for which Plaintiffs seek their requested relief.

## COUNT VIII
(First & Fourteenth Amendments to the United States Constitution)

115.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

116.    Statewide independent and new political party candidates are required

to both collect 25,000 valid ballot access petition signatures and then shoulder the

cost of defending their ballot access petition signatures through Illinois' private

challenge "objector" system to ballot access petitions.

117.    The combined impact of the requirement to collect 25,000 valid

petition signatures and then shoulder the costs of defending their petitions impose a

severe burden on rights guaranteed under the First and Fourteenth Amendments.

118.    The United States District Court for the Eastern District of

Pennsylvania in *Constitution Party of Pennsylvania v. Cotres*, 824 F.3d 386 (E.D.

Pa. 2016) ruled that the combined impact of a requirement to collect over 20,000

valid ballot access petition signatures in tandem with the requirement to defend the

petition signatures as part of a private challenge system imposed a severe burden

on rights guaranteed under the First and Fourteenth Amendments to the United

States Constitution and required the Commonwealth of Pennsylvania to either

reduce the number of ballot access petition signatures required to secure ballot access or abandon Pennsylvania's private challenge system.

119.    Illinois imposes a larger signature collection requirement on statewide independent and new political party candidates to secure ballot access than Pennsylvania and imposes a more rigorous and expensive private challenge system than Pennsylvania's private challenge system which was held unconstitutional in *Constitution Party of Pennsylvania v. Cortes*.

120.    Accordingly, Illinois' ballot access requirements in tandem with the private challenge system imposes a severe burden on rights guaranteed under the First and Fourteenth Amendments to the United States Constitution which is not narrowly tailored to advance a compelling governmental interest for which Plaintiffs seek their requested relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court-

A.    Enter emergency preliminary injunctive relief enjoining Defendants from enforcing 10 ILCS 5/10-4 as applied to ballot access petition circulators who previously circulated ballot access petitions for candidates outside the state of Illinois from circulating ballot access petitions inside Illinois for independent and new political party candidates during the same election year as a violation of the Due Process Clause of the Fourteenth Amendment and unconstitutional

impairment of core political speech under the First and Fourteenth Amendments to the United States Constitution;

B.     Enter permanent injunctive relief enjoining Defendants from enforcing 10 ILCS 5/10-4 as applied to ballot access petition circulators who previously circulated ballot access petitions for candidates outside the state of Illinois from circulating ballot access petitions inside Illinois for independent and new political party candidates during the same election year as a violation of the Due Process Clause of the Fourteenth Amendment and unconstitutional impairment of core political speech under the First and Fourteenth Amendments to the United States Constitution;

C.     Enter permanent injunctive relief enjoining Defendants from enforcing 10 ILCS 5/10-4 to the extent it prohibits ballot access petition circulators who circulated ballot access petitions for Illinois primary candidates from circulating ballot access petitions for the Illinois general election for independent and new political party candidates who did not seek or enter Illinois' primary election contests as a violation of the Equal Protection Clause of the Fourteenth Amendment and unconstitutional impairment of core political speech under the First and Fourteenth Amendments to the United States Constitution;

D.     Enter permanent injunctive relief enjoining Defendants from invalidating any ballot access petition signature for the sole reason the notary

public failed to properly execute the required circulator affidavit as a violation of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution;

E. Declare enforcement of 10 ILCS 5/10-4 as applied to ballot access petition circulators who circulated ballot access petitions for candidates outside the state of Illinois from circulating ballot access petitions inside Illinois for independent and new political party candidates during the same election year as unconstitutional under the Due Process Clause of the Fourteenth Amendment and/or an unconstitutional impairment of core political speech under the First and Fourteenth Amendments to the United States Constitution;

F. Declare enforcement of 10 ILCS 5/10-4 to the extent it prohibits ballot access petition circulators who circulated ballot access petitions for Illinois primary candidates from circulating ballot access petitions for the Illinois general election for independent and new political party candidates who did not seek to nor enter the Illinois' primary election contests unconstitutional under the Equal Protection Clause of the Fourteenth Amendment and/or an unconstitutional impairment of core political speech under the First and Fourteenth Amendments to the United States Constitution;

G.      Declare Defendants' enforcement of the notarization requirement for each page of a ballot access petition unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

H.      Enter permanent injunctive relief enjoining Defendants' enforcement of a 90-day circulation period for independent and new political party presidential candidates to circulate their ballot access petitions required to be filed to secure access to Illinois' general election ballot;

I.      Declare the 90-day circulation period for independent and new political party presidential candidates unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

J.      Enter permanent injunctive relief enjoining Defendants from rejecting ballot access petitions from independent and new political party presidential candidates who file 15,000 valid ballot access petition signatures and enjoining the 25,000 signature requirement for ballot access or, in the alternative, enjoining the private challenge system to ballot access petitions requiring Defendants to certify ballot access petitions timely filed with Defendants for the general election ballot.

K.      Enter permanent injunctive relief enjoining Defendants from requiring independent and new political party presidential candidates to name and publish on ballot access petitions their presidential electors as a condition precedent to the circulation of ballot access petition in Illinois.

36

L.      Award litigation costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988; and,

M.      Retain jurisdiction over this action and grant Plaintiffs any further equitable relief which may in the discretion of this Court to be necessary, proper and just.

Respectfully submitted,

**/s/ Christopher D. Kruger**
Law Office of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201
847.420.1763
chris@kruger-law.com

**/s/ Paul A. Rossi**
Paul A. Rossi, Esq.[1]
IMPG Advocates
*Counsel for Plaintiffs*
316 Hill Street
Suite 1020
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net

---

1    Application for admission to the Northern District of Illinois to be submitted.

37