IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TEAM KENNEDY, LIBERTARIAN PARTY OF ILLINOIS, et. al., | ) ) | No. 24-cv-07027 |
| Plaintiffs, | ) | |
| vs. | ) ) | Honorable John Kness |
| ILLINOIS STATE BOARD OF ELECTIONS, et al., | ) ) | Magistrate Judge Jeannice W. Appenteng |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO SUPPLEMENT**

Plaintiffs, through their attorneys, file their response in opposition to Defendants' motion to supplement, which is yet another bite at the apple attempting to interject extraneous documents (without authentication or foundation) to distract the Court[1], rather than focusing on the four corners of the complaint and the facts alleged therein. The issue is whether the "dual circulator" retriction – an outlier of election law that exists **only** in Illinois, and in no other state – is constitutional. This issue is appropriate for adjudication, since it disparately infringes and burdens all independent and third party candidates. Defendants' exhibit of unknown origin has no bearing upon the issue at hand. Plaintiffs respectfully request that Defendants' motion to supplement is denied.

A. **Illinois has only one election, and Illinois voters do not elect a President.**

Ilinois has only one election for its elected officials, and that election is held in November. 10 ILCS 5/2A-1.2; 10 ILCS 5/21-1. The offices of President and Vice Prresident are not offices that are voted upon by Illinois voters[2], but rather, Illinois

---

[1] "There is an old adage in the law that, if the facts are on your side, you pound on the facts. If the law is on your side, you pound on the law. If neither the facts nor the law is on your side, you pound on the table." *Righthaven LLC v. Democratic Underground, LLC,* Case No. 2:10-cv-1356-RLH-GWF (D. Nev. Apr 15, 2011).
[2] Political parties do not select, or elect, a candidate for President at a primary – *potential* candidate names are printed upon a primary ballot only to provide publicly funded polling data to delegates about candidate popularity. 10 ILCS 5/7-11.

1

*Electors* are elected in November. *Id.*

Section 2A-1.2 purposefully does not list the office of President (or Vice President) because the office of President is defined in the U.S. Constitution, Art. II, and the processes for electing the President and Vice President are governed by the Electoral College process as defined in the U.S. Constitution, Amendment XII.

Established parties privately select their Electors at their respective conventions, along with their candidates for President and Vice President, and send a certification to the State Board of Elections with all such names that are automatically printed upon the ballot, with zero signatures required, and no ability to file an objection against such Elector candidates.

Independent and new political party Electors must gather at least 25,000 registered voter signatures, with each sheet notarized, and all gathered within a 90 day circulation period, and subject to objection by competing political interests.

The Illinois Election Code allows the names of President and Vice President to be printed upon the ballot, rather than the names of each of their respetive Electors, to avoid confusion and shorten the ballot. 10 ILCS 5/21-1(b).

Thus the question of whether a President or Vice President may or may not intend (at some time) to seek elected office is not germane to Illinois election law, since Illinois does not directly elect the President or Vice President.

B. **A primary is a publicly funded private process to select party candidates - no elected offices are elected at a primary under Illinois law.**

No elected officials have ever been elected at a primary "election" in Illinois. A primary is a *publicly funded* process by which *private, non-governmental entities* (ie established political parties) select their candidates for later competition with other political party, independent, and new party candidates at the actual

election in November at which officials are elected. See 10 ILCS 5/7-5; 7-8; 7-9; 7-10.

Aside from being publicly funded and bearing official governmental appearances, a general primary serves the same purpose as a privately funded caucus. At both a primary and a caucus, an established party (a non-governmental, private entity) selects its candidates for the November election – a process that is not binding upon the individuals selected. Independent and new political party candidates do not have public funds allocated to assist them in their selection of their candidates for the November election.

The "dual circulator" issue presented herein is ripe for adjudication because this provision poses a hardship for independent and new political parties every election. The injustice of this section is that the process used by political parties to select their own candidates – a private entity process at which no elected officials are elected – is being used to restrict and deny ballot access to independent and new political party candidates.

It is thus further irrelevant that social media – of unauthenticated authorship or origin – is being interjected into a motion that should instead address the facts alleged in the Plaintiffs' Second Amended Complaint.

C.  **It is irrelevant to this lawsuit whether a candidate may (today) intend to run for elected office years in the future – even if such a decision could be deemed binding, enforceable, and not subject to change later.**

The Seventh Circuit has adopted a more flexible approach to reviewing mootness in election cases. A candidate's present day position about future elected office is not relevant to a review of constitutionality of election laws. Candidates often wait to make such decisions, for a strategic or optimal time.

Even so, a candidate's statement today is not binding, or enforceable, and certainly could be revised as history has shown many candidates have hold their

cards close to their chests, denying speculation, until they are ready to announce. In addition, Presidential Electors who are elected in November, could select whomever they deem worthy.

In *Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003), the Court of Appeals for the Seventh Circuit shut the door on Defendants' inquiry into Plaintiff Robert F. Kennedy Jr.'s future political plans, analogized as follows:

> A candidate plaintiff no more has a duty to run in every election in order to keep his suit alive than an abortion plaintiff has a duty to become pregnant again at the earliest possible opportunity in order to keep her suit alive.

*Id.*, 317 F.3d 719.

In *Majors* the district court dismissed the complaint for lack of subject-matter jurisdiction on the ground that the noncandidate plaintiffs lacked standing and that the candidate plaintiff's suit was moot because of the "lackadaisical pursuit both of the litigation and of his political career." 317 F.3d 719, 722.

In *Majors*, as in this case, the election came and went without any injunction being granted. Not until February of 2000 did the plaintiffs make any further motion in the case. Nor did *Majors* run for public office in 2000. The district court believed that the passage of time and another election cycle took the case out of the "capable of repetition yet avoiding review" standard. *Id*.

The *Majors* opinion, written by Judge Richard Posner, noted:

> [W]hile canonical statements of the exception to mootness for cases capable of repetition but evading review require that the dispute giving rise to the case be capable of repetition by *the same plaintiff*, the courts, perhaps to avoid complicating lawsuits with incessant interruptions to assure the continued existence of a live controversy, do not interpret the requirement literally, at least in abortion and election cases…

*Id.* at 723 (emphasis in original) (internal citations omitted).

This case also is not moot, as the burden which the dual circulator provision

4

as well as the private challenge system and other challenged provisions place on running for office reflects a continuing federal-state controversy which needs resolution. *Moore v. Ogilvie*, 394 U.S. 814 at 816.(1969). In *Ogilvie*, a seven member majority took only 5 pages to dispose of Illinois' signature apportionment requirement, stating, *inter alia*, "[b]ut while the 1968 election is over, the burden which *MacDougall v. Green*, supra, allowed to be placed on the nomination of candidates for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935." *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493 (1969) (overturning *MacDougall*).

This matter is also not moot because it seeks declaratory relief benefiting a class of citizens – candidates, voters, Electors, and new parties. *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655 (1974). In *Richardson*, felons who were denied the opportunity to vote filed suit after the election. The decision below was not only binding on petitioner, a County Clerk and a defendant in the suit below, but also decided the federal constitutional question presented for the unnamed members of the classes represented below by the petitioner and respondents, whose continuing controversy continued in the Supreme Court. *Richardson v. Ramirez*, supra 418 U.S. 24 at 25.

In doing so, the Court distinguished *Brockington v. Rhodes*, 396 U.S. 41, 90 S.Ct. 206 (1969), which held a candidate's case moot because the election was over. The *Ramirez* Court emphasized that, in finding the *Brockington* case moot. that appellant's suit in *Brockington* did not purport to be a class action, and he sought no declaratory relief. *Richardson*, supra, 418 U.S. 24 at 25.

*Weinstein's* **Second Prong**. A controversy is "capable of repetition, yet evading review," and therefore not moot, if (1) the challenged action is in its

5

duration too short to be fully litigated before cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). As applied to elections, eight circuits, including the Seventh, have a more flexible "capable of repetition" standard, while four have a more rigid one. *Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003).

Within the "flexible" circuits, the Fifth, Sixth, Seventh, and Ninth[3] examine whether other members of the public might be affected by a law in the future.

Thus there is no merit to Defendants' attempt to interject social media posts from the internet, long before discovery has been completed, even if such a social media post was (a) deemed to be a permanent, irrevocable/non-changeable decision by one Plaintiff, and (b) properly authenticated with foundation.

WHEREFORE, Plaintiffs through their attorneys respectfully request that Defendants' motion to supplement is denied, and all extraneous and irrelevant submissions beyond the four corners of the Second Amended Complaint submitted by Defendants are stricken and disregarded, or any other relief that is just and appropriate.

Respectfully submitted,

| | |
|---|---|
| /s/ Christopher D. Kruger | /s/ Andrew Finko |
| Law Office of Christopher Kruger | 875 N. Michigan Ave. |
| 2022 Dodge Avenue | Suite 3100 |
| Evanston, IL 60201 | Chicago, IL 60611 |
| 847.420.1763 | (773) 480-0616 |
| chris@kruger-law.com | Finkolaw @ Fastmail. FM |

---

[3] *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014); *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005); *Majors v. Abell*, supra, 317 F.3d 719 (7th Cir. 2003); *Schaefer v. Townsend*, 215 F.3d 1031 (9th Cir. 2000).

**<u>Certificate of Service</u>**

    I, the undersigned attorney, certify that on September 19, 2025, I electronically filed the foregoing filing with the Clerk of the District Court for the Northern District of Illinois using the CM/ECF system, which sends an email with a download link of this filing to all counsel of record.

                    <u>/s/ Andrew Finko</u>