**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TEAM KENNEDY, LIBERTARIAN PARTY OF ILLINOIS, ROBERT F. KENNEDY JR., WILLIAM REDPATH, and ANGEL OAKLEY | ) ) ) | |
| | ) | No. 24-cv-7027 |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | Hon. John Kness |
| ILLINOIS STATE BOARD OF ELECTIONS, and, BERNADETTE MATTHEWS, in her official capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) | Magistrate Judge Jeannice Appenteng |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| INDEPENDENCE PARTY, GARY PIERCE, and ALEJANDRO CABRERA, | ) ) | |
| | ) | |
| Intervenor-Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, and, BERNADETTE MATTHEWS, in her official capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

## Memorandum of Law in Support of Motion to Intervene as Plaintiffs by Gary Pierce, Alejandro Cabrera and the Independence Party

GARY PIERCE ("Pierce"), ALEJANDRO CABRERA ("Cabrera"), and the

INDEPENDENCE PARTY ("IP") (collectively, "Proposed Intervenors"), respectfully

request leave pursuant to Federal Rules of Civil Procedure Rule 24 to intervene in this

action as Plaintiffs, and file their proposed Intervenors' Verified Complaint, which is

attached to their Motion to Intervene.

1

**INTRODUCTION**

Team Kennedy, as a part of the Robert F. Kennedy, Jr.'s independent presidential campaign, the Libertarian Party of Illinois and its chairman, as an aspiring political party, independent presidential candidate Robert F. Kennedy, Jr. and Angel Oakley, an independent elector for Kennedy initiated this litigation to challenge the "dual circualator" restriction in 10 ILCS 5/10-4 by Defendant Illinois State Board of Elections ("the Board"). See *Complaint for Declaratory and Injunctive Relief*, Dkt 1.

Plaintiffs have alleged that the "dual circulator" restriction in 10 ILCS 5/10-4 in addition to the requirement of 25,000 valid signatures for statewide candidacies after defeating an objection procedure before the electoral board, all collected within a 90-day duration with each sheet notarized, violates the First and Fourteenth Amendments. Plaintiffs alleged that they were irreparably harmed because of these provisions of the Election Code, and had requested declaratory and injunctive relief. Dkt 1, ¶¶ 1-6. Proposed Intervenors have suffered the same deprivation of rights and accompanying economic and reputational damages as the plaintiffs in the underlying suit, and seek to intervene. The original Plaintiffs do not oppose this request for intervention.

Rule 24 allows parties to intervene in federal litigation when they have a significant protectable interest and existing parties do not adequately represent that interest. Proposed Intervenors, as an aspiring political party and its candidates for Governor and Lieutenant Governor are currently being harmed and will be irreparably harmed by these same provisions if they are denied relief. Intervenors are currently gathering signatures for state office, and established party status through the November

2

3, 2026 general election, and their interests are ongoing and subject to an electoral board objection proceeding anticipated to commence in June 2026.

Intervenors satisfy all factors that courts consider when deciding whether to permit intervention, and they respectfully request this honorable court grant Intervenors' Motion and allow them to intervene in this action as intervening plaintiffs, and have their day in court to address their First Amendment ballot access rights.

The original action before this Court concerns the obstacles facing independent and new party candidates to collect petition signatures to gain ballot status at the general election. On August 9, 2024, the Plaintiffs filed a Complaint and Motion for Preliminary Injunction. Dkt 1, 2, 3. In the Complaint, Plaintiffs requested permanent declaratory and injunctive relief from various provisions of the Election Code, including the "dual circulator" restriction and the private challenge system. Dkt 1, ¶¶ 1-6

In their Motion for Preliminary Injunction, the Kennedy plaintiffs asked the Court to preliminarily enjoin "…the attempted (and unprecedented) extension of 10 ILCS 5/10-4 to ban petition circulators from circulating the Petition based on the sole fact that they had previously circulated ballot access petitions for major or minor political party candidates in states other than Illinois." Dkt 3, pg. 3. On December 6, 2024, Plaintiffs' Motion for Preliminary Injunction was dismissed as moot before a decision could be issued. Dkt 1, 2, 3, 26.

On January 17, 2025, Plaintiffs filed their First Amended Complaint. Dkt 28. After typographical corrections, the current Second Amended Complaint (the operative complaint) appears of record as Dkt 31 ("Complaint").

3

On March 14, 2025, Defendants moved to dismiss the Complaint for lack of jurisdiction; the Motion to Dismiss was fully briefed and the Court heard oral argument on December 11, 2025. Dkt 37, 38, 50, 55, 66. On Feb. 10, 2026, Plaintiffs filed a motion to add a recent Supreme Court decision as supplemental authority (Dkt 69), and are awaiting the court's ruling. No discovery has been undertaken, and no substantive rulings have been made.

Intervention under Fed.R.Civ.P. Rule 24 provides a means for non-parties to "protect interests that might otherwise be adversely affected." *iWork Software, LLC v. Corporate Express, Inc.*, 2003 WL 22494851 at *1, No. 02-CV-6355 (N.D. Ill. 2003). Rule 24 allows for two types of intervention: (1) intervention as of right; and (2) permissive intervention. Irrespective of the type of intervention sought, "Rule 24 should be liberally construed *in favor of potential intervenors.*" *Id.* (emphasis supplied); see also *Michigan v. U.S. Army Corps of Engr's*, No. 10-CV-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010). The Proposed Intervenors qualify for intervention under either type.

## ARGUMENT

## I. Proposed Intervenors Are Entitled to Intervene as a Matter of Right Under Rule 24(a)(2).

Proposed Intervenors' Motion to Intervene is appropriate because their claim of unconstitutionality of the "dual circulator" restriction in 10 ILCS 5/10-4 is familiar to this honorable court because of the underlying Team Kennedy complaint. However, two additional First Amendment ballot access decisions have issued by the Supreme Court: *Bost v. Ill. State Bd. of Elections*, 607 US __, 146 S.Ct. 513, 519 (2026) and *Chiles v. Salazar*, 607 U.S. ___ (2026) (Docket 24-539 March 31, 2026).

4

In addition, Proposed Intervenors' claims are ripe for adjudication because they are currently gathering signatures, and anticipate that the Defendants will enforce the "dual circulator" restriction in 10 ILCS 5/10-4 in June 2026 during the electoral board objection process. Candidates have no method of verifying or checking whether a circulator has previously circulated for an established party candidate to avoid the draconian result of this provision – the striking of entire sheets of registered voters, without due process, and denial of their right to support the candidates of their choice.

Proposed Intervenors are similarly situated, and subject to the same laws concerning petition gathering, resolving objections, and certification for the 2026 ballot as in the underlying suit. A separate lawsuit would otherwise place a different judge in the challenging position of review of the Election Code in a short duration, and there may not be sufficient opportunity based on already-assigned cases to reach a decision before June 2026.

The Court of Appeals for the Seventh Circuit has held that intervention as a matter of right *must* be granted where the following four criteria are met: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties of the petition." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Shea v. Angulo*, 19 F.3d 343, 344 (7th Cir. 1994)).

Proposed Intervenors are entitled to intervene in this action as of right. First, their motion is timely, as the underlying case is still in the pleading stage and no substantive decision has been issued. Additionally, signature gathering for the 2026

election cycle for independent and third-party candidacies has begun on February 26, 2026 for the filing period May 18-26, 2026.  Proposed Intervenors nominated candidates weeks ago, and they only became aware of the impact of the dual circulator ban after circulation commenced. *See* Declarations of Richard Whitney (**Exh. B-1** to Motion for Preliminary Injunction), Gary Pierce (**Exh. B-2** to Motion for Preliminary Injunction), Alejandro Cabrera (**Exh. B-3** to Motion for Preliminary Injunction) and Angel Oakley (**Exh. B-4** to Motion for Preliminary Injunction).

Second, Proposed Intervenors have a strong protectable interest in running for office and in obtaining relief from enforcement of these unconstitutional provisions of the Illinois Election Code, which continue to evade review since the inception of the underlying lawsuit; indeed, Illinois' dual circulator restriction has evaded review since the *Meyer v. Grant* and its progeny entirely changed First Amendment jurisprudence concerning petition circulation. 486 U.S. 414 (1988).

Third, the denial of this motion would grievously impair Proposed Intervenors' ability to protect their interests, because Proposed Intervenors would be subjected to the same justiciability arguments should they have to expend time and resources to initiate a separate lawsuit. See *Sosna v. Iowa*, 419 U.S. 393, 400 (1975): "[T]he case before us is one in which state officials will undoubtedly continue to enforce the challenged statute and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion."

Finally, Proposed Intervenors' interests cannot be adequately represented by Plaintiffs, as Plaintiffs are procedurally hamstrung; should Defendants prevail on their

6

justiciability arguments, i.e., that all Plaintiffs claims are now moot or nonjusticiable, Proposed Intervenors could not obtain relief.

In addition, Proposed Intervenors can present updated facts which may be necessary to prove Plaintiffs' claims and obtain appropriate relief. Fed. R. Civ. P. 24(a)(2). With the addition of the Independence Party, Gary Pierce and Alejandro Carbrea, judicial efficiency and a decision on the merits will be served, as the constitutional claims of candidates – past, present, and future – may finally be resolved.

It should be noted that political parties are routinely granted intervention in cases concerning election rules and procedures.[1] This case is thus no different from the many that have come before it addressing First Amendment ballot access rights. Proposed Intervenors respectfully request that they be permitted to intervene as of right to protect their unique interest as active participants in the current Illinois election.

### A. Proposed Intervenors' Motion Is Timely.

This motion is filed prior to the petition filing period of May 18-26, 2026, and prior to the electoral board proceeding in June (date TBD) wherein the Defendants could enforce the "dual circulator" restriction in 10 ILCS 5/10-4 to strike entire sheets of otherwise valid Illinois voters, denying Intervenors the right to count those voters

---

[1] *See, e.g.*, *Thomas v. Andino*, 335 F.R.D. 364, 370 (D.S.C. 2020); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 304 (5th Cir. 2022); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020); *Alliance for Retired Americans v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020); *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. June 26, 2020); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-1143 (D. Ariz. June 26, 2020); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020); *Edwards v. Vos*, Doc. 27, No. 20-cv-340 (W.D. Wis. June 23, 2020); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 (D. Minn. June 23, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020); *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24-NKM (W.D. Va. Apr. 29, 2020); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020).

towards the 25,000 the Election Code requires of new party candidates.  In addition, no discovery has yet been undertaken, and no substantive rulings made.

The test for timeliness "is essentially one of reasonableness: '[P]otential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Reich,* 64 F.3d at 321 (quoting *Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994) (internal citations omitted)). Four factors are considered when determining whether a petition to intervene is timely: (1) the length of time the intervenor knew or should have known of his interest in this case; (2) the prejudice to the original party caused by the delay; (3) the resulting prejudice to the intervenor if the motion is denied; and (4) any unusual circumstances. *See Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) (citing *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985)).

There is no question Proposed Intervenors' motion is timely, as the underlying case is still in the pleading stage, and Proposed Intervenors have filed this Motion to Intervene after learning of the "dual circulator" restriction after petitioning had begun for independent and new party candidates.  Moreover, granting the Motion to Intervene will not delay a decision on the merits, it will in fact accelerate it, by removing all doubt as to the justiciability of the underlying lawsuit. See Declarations attached to Motion for Preliminary Injunction, Exh. B-1, B-2, B-3, and B-4.

Pierce was nominated for Governor by the Independence Party on January 13, 2026, at their membership meeting, which was held online.  Alejandro Cabrera was subsequently nominated for Lieutenant Governor on January 23, 2026. At that time,

neither the candidates nor did the party membership generally had knowledge of the dual circulator restriction.

Pierce and Cabrera had previously circulated petition sheets for a couple of candidates, and are therefore prohibited from circulating their own petitions, and more significantly prohibited from promoting the Independence Party or their candidacy through petition circulation – a well-established First Amendment protected speech.

Proposed Intervenors are diligent in seeking to intervene at the earliest possible time. No prejudice will accrue to plaintiffs or defendants if Proposed Intervenors are permitted to join at this stage, and plaintiffs expressly consent to Proposed Intervenors' intervention. Proposed Intervenors recognize the time-sensitive nature of the underlying lawsuit and are prepared to comply with any schedule the Court may set.

**B.** **Proposed Intervenors have significant protectable interests in obtaining a declaration regarding the applicability of the "dual circulator" restriction.**

Proposed Intervenors have an interest in fair election laws, their right to seek ballot placement, their right to form a new political party, and their right to vote effectively for the candidates of their choice. Illinois has had far too many races with one, or perhaps two, candidates, not because of a lack of independent candidates, but directly because the Election Code regularly amended by established party officials imposes too burdensome requirements upon independent and new party candidates.

This case directly burdens and harms Pierce and Cabrera directly, because the "dual circulator" restriction prevents each from circulating their own signature petitions – and circulation is a form of political speech. Pierce and Cabrera cannot deliver their political message, their perspective as candidates of the Independence

Party through circulating their own petitions.  The restriction upon circulation is a

content based restriction imposed upon Pierce and Cabrera's speech, which is an

unconstitutional restriction, as recently confirmed by the Supreme Court:

> Consistent with the First Amendment's jealous protections for the individual's right to think and speak freely, this Court has long held that laws regulating speech based on its subject matter or "communicative content" are "**presumptively unconstitutional**." *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015). As a general rule, such "content-based" restrictions trigger "strict scrutiny," a demanding standard that requires the government to prove its restriction on speech is "narrowly tailored to serve compelling state interests." *Ibid.* Under that test, it is " 'rare that a regulation . . . will ever be permissible.' " *Brown v. Entertainment Merchants Assn.,* 564 U.S. 786, 799 (2011) (quoting *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 818 (2000)).

> We have recognized, as well, the even greater dangers associated with regulations that discriminate based on the speaker's point of view. When the government seeks not just to restrict speech based on its subject matter, but also seeks to dictate what particular "opinion or perspective" individuals may express on that subject, "the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "Viewpoint discrimination," as we have put it, represents "an egregious form" of content regulation, and governments in this country must nearly always "abstain" from it. *Ibid.*; see also *Iancu v. Brunetti,* 588 U.S. 388, 393 (2019) (describing "the bedrock First Amendment principle that the government cannot discriminate" based on viewpoint (internal quotation marks omitted)); *Good News Club v. Milford Central School,* 533 U.S. 98, 112–113 (2001); *Barnette*, 319 U. S., at 642.

*Chiles v. Salazar*, 607 U.S. ___ (2026) (slip op. at pg. 8-9).  See also, *Citizens United v.*

*Federal Election Com'n*, 558 U.S. 310 (2010) (First Amendment does not allow

prohibitions of speech based on the identity of the speaker).

In this litigation, if the underlying suit is dismissed, not on the merits, but on

grounds of justiciability, the Proposed Intervenors would suffer grievously. In the

Seventh Circuit, a proposed intervenor must demonstrate a direct, significant and

legally protectable interest at issue in the lawsuit. *Wade v. Goldschmidt*, 673 F.2d 182, 185

(7th Cir.1982) (per curiam). The interest must be so direct that the applicant, as the

applicants in this case, would have "a right to maintain a claim for the relief sought."

*Heyman v. Exchange National Bank of Chicago*, 615 F.2d 1190, 1193 (7th Cir.1980); see also

*Security Ins. Co. of Hartford v. Schipporeit, Inc., et. al.*, 69 F.3d 1377, 1380 (7th Cir. 1995).

That requirement is met here, where Proposed Intervenors are subject to the same

challenged provisions as the Plaintiffs in the underlying suit, and the Plaintiffs have

consented to the intervention. In addition, this court is very familiar with the issues.

Proposed Intervenors have significant protectable interests, including their right

to participate in the 2026 general election. Plaintiffs' fundamental First Amendment

rights are therefore at stake. See *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). As the

Supreme Court has explained:

> The right to form a party for the advancement of political goals means little if a
> party can be kept off the election ballot and thus denied an equal opportunity to
> win votes. So also, the right to vote is heavily burdened if that vote may be cast
> only for one of two parties at a time when other parties are clamoring for a place on
> the ballot.

*Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

The right to form a party for the advancement of political goals and the right to

vote effectively is thus, under *Williams,* a protectable interest that is independently

sufficient to warrant intervention in this matter. In addition,  candidates Pierce and

Cabrera independently have standing to challenge election rules, as "the harm

candidates suffer is distinct from that suffered by the people generally." See *Bost v. Ill.*

*State Bd. of Elections*, 607 US __, 146 S.Ct. 513, 519 (2026) (internal citation and quotation

omitted).  And only one plaintiff needs standing for this suit to proceed.

Proposed Intervenors are expending substantial funds and resources and will

continue on their petition drives endeavoring to gain access as Independence Party

candidates to the general election ballot. They are spending more money and are damaged by the "dual circulator" restriction, because they are forced to gather more signatures not only to overcome bad voter penmanship, but also the potential and unknown (or set up by the opposition) "dual circulator" restriction, which is a hidden landmine. That injury is also sufficient to establish Proposed Intervenors' standing to challenge the Defendant's potential action to remove them from the ballot based upon the "dual circulator" restriction.

**C.** **Denial of intervention would impair proposed Intervenors' ability to expeditiously protect their interests.**

Impairment "depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors." *Meridian Homes Corp v. Nicholas W. Prassas & Co.*, 201, 204 (7th Cir. 1982). The disposition of Plaintiffs' lawsuit may, "as a practical matter," impair or impede Proposed Intervenors' ability to protect their interests. Fed. R. Civ. P. 24(a)(2). A procedural dismissal of the underlying case, without a decision upon the merits, would irreparably impair Proposed Intervenors' First and Fourteenth Amendment rights. This lawsuit can resolve the constitutionality of the "dual circulator" restriction in the Election Code – a restriction that is not present in any other state's election laws.

Given the shortness of time since petition signature gathering is under way – Proposed Intervenors, if granted intervention, would request that this Court issue a ruling on their request for preliminary relief (filed contemporaneously with this Motion) within weeks from today, so that they may adjust their petition gathering and expenditure of funds accordingly. If Proposed Intervenors are not permitted to

intervene here, it is unlikely they will be able to meaningfully assert their claims or obtain timely relief in any other proceeding in advance of the objection process in June 2026, or secure ballot placement for the November 3, 12026 general election.

**D.** **Proposed Intervenors' interests are not adequately represented by Plaintiffs.**

Proposed Intervenors' interests are not adequately represented by the existing Plaintiffs in this case. The Supreme Court has stated that demonstrating a Plaintiff's inadequacy to represent Proposed Intervenors' interests "present[s] [the] proposed intervenors with only a minimal challenge." *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022). Although a would-be intervenor has the burden to demonstrate that the representation of his interests may be inadequate, the Seventh Circuit has held that such a burden is minimal. *Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F. 2d 1256, 1261 (7th Cir. 1983).

To meet the requirement, intervenors need only show that "representation of [their] interest may be inadequate," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). While it is not enough that a proposed intervenor only have "related" interests with an existing party (*Berger*, 142 S. Ct. at 2204), a court only needs to find "sufficient doubt about the adequacy of representation to warrant intervention." *Trbovich*, 404 U.S. at 538.

In this case, there is grave doubt that this case will be decided on the merits in this election cycle, should intervention be denied. The infirmities in the underlying case related to standing and mootness means that the arguments related to dual circulation and the other challenged provisions, already developed, would evade review, should intervention be denied.

13

Proposed Intervenors urge this honorable court to allow them to intervene in this case, because "[n]o other party is in precisely the same position as [the intervening party]"). See *Maxum Indemnity Co. Security Insur. Co. of Hartford v. Eclipse Manufacturing Co.*, 06-cv-4946, 2008 WL 4831734 at *4 (N.D. Ill. 2008).

In addition, Proposed Intervenors assert new arguments, based upon recent Supreme Court decisions, that were not available last year during the briefing of the underlying Plaintiffs' response to the Defendants' motion to dismiss.

The relief Plaintiffs are requesting would benefit Proposed Intervenors directly. Specifically, Plaintiffs seek a declaration that the "dual circulator" restriction (the only one of its type in the nation) is unconstitutional – it is unnecessary in light of the many other burdens that independent and new party candidates must overcome, including five fold greater number of signatures, all gathered in the same 90 day time period as established parties, and then to overcome the private challenge/objection process. Proposed Intervenors thus have an independent interest in being party to any proceeding in which such relief may be granted.

## II.     The Proposed Intervenors Are Also Entitled to Permissive Intervention.

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention would be warranted under Fed.R.Civ.P. Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. Rule 24(b)(1). In exercising its discretion, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. Rule 24(b)(3).

14

For the reasons set forth above, the motion is timely, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties, and Proposed Intervenors are not adequately represented by the existing Plaintiffs. Proposed Intervenors are addressing the constitutionality of the same "dual circulator" restriction in 10 ILCS 5/10-4 as the original Plaintiffs' action. (Dkt 31) All of these factors weigh in favor of intervention. Plaintiffs' pleading makes clear the direct stake that Proposed Intervenors have in this case.

Beyond that, Proposed Intervenors' interests implicate the most fundamental First Amendment rights, see *Williams*, 393 U.S. at 30, as well as expanding the choices presented to Illinois voters in the 2026 general election. This federal suit directly impacts those rights. Proposed Intervenors respectfully request leave to intervene.

## CONCLUSION

Wherefore, Proposed Intervenors, respectfully request that the Court grant their request for expedited review and grant their Motion to Intervene as a matter of right under Fed. Rule of Civ. P. 24(a)(2) or, in the alternative, permit them to intervene under Fed. Rule of Civ. P. 24(b).

Respectfully submitted:

/s/ Christopher D. Kruger
Christopher D. Kruger
Law Office of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201
847.420.1763
chris@kruger-law.com

/s/ Andrew Finko             .
Andrew Finko
875 N. Michigan Ave.
Suite 3100
Chicago, IL 60611
(773) 480-0616
Finkolaw@Fastmail.FM

15

**Certificate of Service**

I, the undersigned an attorney, certify that on April 4, 2026 I electronically filed the foregoing filing with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which sends an email with a download link of this filing to all counsel of record.

<u>/s/ Andrew Finko</u> .

16