**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Team Kennedy, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 24-cv-7027 |
| | ) | |
| v. | ) | Judge John F. Kness |
| | ) | |
| Illinois State Board of Elections, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTION TO INTERVENTION**
**BY PROPOSED PLAINTIFFS**
**THE INDEPENDENCE PARTY, GARY PIERCE, AND ALEJANDRO CABRERA**

Defendants, the Illinois State Board of Elections (the "Board" or "SBOE") and Bernadette Matthews, in her official capacity as Executive Director of the SBOE, through their attorney Kwame Raoul, Attorney General of Illinois, submit the following objection to the proposed intervention as plaintiffs by the Independence Party, Gary Pierce, and Alejandro Cabrera. Dkt. 73.

**INTRODUCTION**

Plaintiffs filed this lawsuit on August 9, 2024, alleging that the dual circulator rule and other Illinois ballot access rules violated their constitutional rights. Dkt. 1. Plaintiff Robert F. Kennedy and Team Kennedy also sought preliminary injunctive relief, seeking to block the Board from applying the dual circulator rule to bar signatures collected by Kennedy's circulators who had previously circulated petitions for other candidates out-of-state. Dkt. 2. The Libertarian Party Plaintiffs did not join this motion (Dkt. 2 and 3), presumably because the Libertarian Party did not field a presidential candidate in Illinois in the 2024 election. The Board ruled in Kennedy's favor, and he appeared on the ballot in November 2024. Twenty months later, the Defendants' motion to dismiss Plaintiffs' Second Amended Complaint is fully briefed and pending.

1

Now, an entirely new set of proposed plaintiffs – the Independence Party and its proposed candidates for Governor and Lieutenant Governor, Gary Pierce and Alejandro Cabrera – seek to intervene in this matter. The Proposed Intervenors offer an entirely new set of facts regarding their intent to gather signatures for the November 2026 election cycle, as well as new facts about Illinois's election landscape. And while the Proposed Intervenors also challenge the dual circulator provision, they assert a slew of new legal claims based on entirely new legal theories. Moreover, the Proposed Intervenors seek to bring a new preliminary injunction motion that would benefit them rather than the original Plaintiffs.

The Proposed Intervenors' motion should be denied because they do not meet the criteria for intervention as of right. They have no direct interest in this matter and their interests cannot be impaired or impeded by a judgment in this case. Moreover, their assertion that their interests are not adequately represented by the current Plaintiffs is belied by their choice to be represented by the very same attorneys. Nor should the Proposed Intervenors be permitted to intervene. They are not similarly situated to the original Plaintiffs and allowing intervention would unquestionably delay the resolution of this case.

## ARGUMENT

### I. The Proposed Intervenors Have No Right to Intervene.

To intervene as a matter of right under Rule 24(a)(2), four requirements must be met: (1) the application must be timely; (2) the applicant must "claim[] an interest relating to the property or transaction that is the subject of the action"; (3) the applicant must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) the "existing parties must not be adequate representatives of the applicant's interest." Fed. R. Civ. P. 24(a); *see also Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 700

(7th Cir. 2003). A proposed intervenor bears the burden of proving each of the elements. *Ligas v. Maram,* 478 F.3d 771, 773 (7th Cir. 2007). Here, though, the Proposed Intervenors fail to establish any of these requirements.

### A.    The Proposed Intervenors' Motion is Not Timely.

Even if the Proposed Intervenors had an interest that might justify intervention here (and as discussed below, they do not), their motion should be denied because it is not timely. "A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation." *Heartwood, Inc.,* 316 F.3d at 701. Whether a motion to intervene is timely is determined based on "the totality of the circumstances," with the courts considering four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Shea*, 19 F.3d at 348-49 (quotation omitted).

First, Proposed Intervenors do not clearly state when they first knew that their interests might be adversely affected. They claim that "they only became aware of the impact of the dual circulator ban after circulation commenced" (Dkt. 71 at 6), but the cited declarations do not support that claim. *See* Dkt. 70 at Exhibits B-1 through B-4. That fact alone justifies a finding that their motion is not timely. *See Libertarian Party v. Pritzker*, No. 1:20-cv-2112, 2020 U.S. Dist. LEXIS 213122, at *10-11 (N.D. Ill. Sep. 10, 2020) (Where the potential intervenor did not "address when [he] learned of this case and its potential impact on [his] rights," the "Court could deny [his] motion on that basis alone.").

Turning to the second factor, Proposed Intervenors argue that their motion is timely because the "underlying case is still in the pleading stage." Dkt. 71 at 5. But there is no question

that adding new parties at this late date would prejudice the Defendants and delay resolution of this case. Defendants' motion to dismiss the operative complaint in this matter has been pending for over a year, and the Court held oral argument on that motion four months ago. Dkt. 71 at 4.

Now, the Proposed Intervenors offer up 62 paragraphs (17 pages worth) of new facts about their case. *See* Dkt. 73 at Exhibit A ¶¶ 7-9 and 12-70. And while Counts I, II, and VI in Proposed Intervenors' complaint are similar to Counts I, II, and V in the Second Amended Complaint (*Compare* Dkt. 73 at Exhibit A with Dkt. 31), these are all as-applied challenges, which means that the Court could find in favor of the Plaintiffs and against the Proposed Intervenors (or vice versa).[1] Moreover, the Proposed Intervenors' other claims are quite different from Plaintiffs' claims. The Proposed Intervenors' Count III is a facial First Amendment challenge asserting that the dual circulator provision "impos[es] a *de facto* political party affiliation" on circulators (Dkt. 73 at Ex. A ¶ 80), that the provision "constitutes an impermissible restraint on trade (*id*. ¶ 81), that it constitutes an impermissible "lock in" provision (*id*. ¶¶ 82-83), and that the provision is "ripe for abuse" by "saboteurs" from established political parties who may deliberately gather signatures for independent or new party candidates that they know cannot be used. *Id*. ¶ 85. None of these claims or theories have appeared in this case to date. And while both the Proposed Intervenors and the Plaintiffs assert equal protection claims, the basis of those claims is different (*compare* Dkt. 73 at Ex. A at Count IV with Dkt. 31 at Count III), and Plaintiffs have already conceded that they have no independent equal protection claim. *See* Dkt. 50 at 31-32 (arguing that "equal protection

---

[1] Count VI of the Proposed Intervenors' complaint and Count V of the Second Amended Complaint are not labeled as as-applied challenges, but the "fact-intensive analysis required for the *Anderson-Burdick* balancing test" implies that a cumulative effect claim is necessarily an as-applied challenge. *See Gill v. Scholz*, 962 F.3d 360, 365 (7th Cir. 2020) (reversing and remanding because the district court had "glossed over the factual differences" between Gill's case and *Tripp v. Scholz*, 872 F.3d 857 (7th Cir. 2017)); *see also Gill v. Linnabary*, 63 F.4th 609, 614 (7th Cir. 2023) (recognizing that Gill's cumulative effect claim was moot because he raised "an as-applied challenge to these Illinois election provisions for a district that, due to the 2020 redistricting, no longer exists.").

analysis and the analysis of associational rights under the First Amendment are, for most purposes, identical").

And finally, Plaintiffs alleged that the dual circulator rule violated due process because they lacked notice that the dual circulator rule would be applied to circulators who previously circulated petitions for other parties out of state. Dkt. 31 at Count IV (¶¶ 27-30, 76-80). While the Proposed Intervenors' due process claim (Count V) includes that claim, it also asserts that the provision violates due process because Defendants do not "maintain[] a database, registry, or other source that contains" the names, addresses, and political parties of circulators (Dkt. 73 at Ex. A ¶ 98), and do not "provide[] independent and new political party candidates "with the names, addresses, and candidates for circulators who have previously circulated petitions for established party candidates." *Id*. ¶ 103. The Proposed Intervenors even seem to claim that the State violates their due process rights because it "does not require voters to register with or maintain allegiance to an established Illinois political party." *Id*.

These claims are quite different from Plaintiffs' theories and would require substantial additional consideration and discovery. Moreover, Proposed Intervenors aren't just trying to come along for the ride; instead, they ask to divert the Court's resources into the consideration of a preliminary injunction motion that would benefit them rather than the Plaintiffs and would require the consideration of new facts, new claims, and new legal theories—all on an emergency basis. Dkt. 71 at 12. On the other hand, the Proposed Intervenors would not be prejudiced at all if their motion to intervene is denied, because they remain free to file their own lawsuit. *See Libertarian Party*, 2020 U.S. Dist. LEXIS 213122, at *15 ("Importantly, . . . nothing has ever prevented Ruggieri from filing his own action seeking relief on his own unique facts.").

And finally, the fact that Proposed Intervenors are represented by the same counsel is an unusual circumstance that "reinforces the motion's untimeliness." *See Alvarez v. Experian Info. Sols., Inc.*, 758 F. Supp. 3d 60, 92 (E.D.N.Y. 2024). As in *Alvarez*, this motion "was not brought by independent third parties who learned of this lawsuit and filed the motion in an effort to protect their potential interest . . . rather, it was brought by Plaintiffs' counsel in an effort to save their [lawsuit]." *Id*. at 92 (holding that the fact that the intervention motion was brought by Plaintiffs' counsel was an unusual circumstance that cut against a finding of timeliness and denying intervention "by right and by permission").

As this Court found in another election case, "this case needs to be resolved promptly and adding another party would hinder that goal." *Bost v. Ill. State Bd. of Elections*, No. 22-cv-02754, 2022 U.S. Dist. LEXIS 185464, at *21 (N.D. Ill. Oct. 11, 2022) (Kness, J.), *aff'd*, 75 F.4th 682 (7th Cir. 2023).[2] Allowing intervention "would make this suit unnecessarily complex, unwieldy and prolonged." *Shea*, 19 F.3d at 349. The Proposed Intervenors' motion should be denied accordingly.

### B. The Proposed Intervenors Have No Direct Interest in this Case that Will Be Impaired by a Decision from this Court.

Besides being untimely, Proposed Intervenors' motion also should be denied because they fail to meet any of the other requirements. To intervene as of right, a non-party must demonstrate to the Court's satisfaction that he possesses a "direct, substantial, and legally protectable" interest in the case, *United States v BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003), and that this interest

---

[2] The Seventh Circuit disagreed with the Court that the intermediate "same goal" standard applied to the Democratic Party of Illinois ("DPI")'s motion to intervene to defend the Illinois rule allowing mail-in ballots to be counted after Election Day. *Bost*, 75 F.4th at 689. However, the Seventh Circuit found that DPI had not shown even a potential conflict with SBOE, and therefore upheld the Court's decision not to allow intervention as of right. *Id*. at 690. The Seventh Circuit also upheld the Court's decision to deny permissive intervention. *Id*. at 691.

6

will be practically impaired by the Court's resolution of the case in the proposed intervenor's absence. *Maram*, 478 F.3d at 774.

Here, the Proposed Intervenors have not shown that they have a direct interest in this case. The "fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit . . . does not entitle you to intervene in their suit." *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009). But that is exactly the Proposed Intervenors' interest here—they anticipate that a judgment in Plaintiffs' favor striking down the dual circulator provision would benefit them as well. Dkt. 71 at 6, 9-10.

Proposed Intervenors argue that "political parties are routinely granted intervention in cases concerning election rules and procedures" (Dkt. 71 at 7), citing to various unpublished orders almost entirely from outside this circuit. *Id*. at 7 n.1. But all of the opinions that Proposed Intervenors cite that are readily available on Lexis involve a proposed change to election procedures, with the political party intervening to defend the challenged statute.[3] None of these

---

[3] *See Thomas v. Andino*, 335 F.R.D. 364, 370 (D.S.C. 2020) (also cited by Proposed Intervenors as *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020)) (Republican Party allowed to intervene as defendant in suit seeking changes to absentee ballot rules); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 304 (5th Cir. 2022) (Republican Committee allowed to intervene as defendant in case challenging recent amendments to voter registration, vote by mail and other election laws); *Ariz. Democratic Party v. Hobbs*, No. CV-20-1143, 2020 U.S. Dist. LEXIS 209865, at *4 (D. Ariz. June 26, 2020) (allowing Republican National Committee and the Arizona Republican Party to intervene as defendants in challenge to election-day deadline for correcting ballots with a missing signature); *Priorities USA v. Nessel*, No. 19-13341, 2020 WL 2615504, 2020 U.S. Dist. LEXIS 90127, at *5 (E.D. Mich. May 22, 2020) (Michigan Republican Party and Republican National Committee sought to intervene as defendants to defend absentee voter law and voter transportation law); *League of Women Voters of Va. v. Va. State Bd. of Elections*, No. 6:20-CV-00024, 2020 U.S. Dist. LEXIS 76765, at *10-11 (W.D. Va. Apr. 30, 2020) (allowing Republican Party of Virginia to intervene as defendant to defend absentee voter restrictions where party moved to intervene "just seven days after Plaintiffs filed their complaint," and the party "introduce[d] no unrelated, additional claims into [the] suit"); *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, 2020 U.S. Dist. LEXIS 54269, at *5 (W.D. Wis. Mar. 28, 2020) (Republican National Committee and the Republican Party of Wisconsin sought to intervene as defendants in suit brought by Democratic National Committee and the Democratic Party of Wisconsin seeking to enjoin  enforcement of certain election laws given the COVID-19 public health emergency); *Edwards v. Vos*, No. 20-cv-340, 2020 U.S. Dist. LEXIS 111174, at *3 (W.D. Wis. June 23, 2020) (allowing Republican Party to intervene as defendant

cases involves a political party seeking to intervene as a plaintiff to challenge a ballot access provision. And as this Court observed in *Bost*, even in this context, "the intervention analysis is highly fact specific" rather than routine. 2022 U.S. Dist. LEXIS 185464, at *10 (denying intervention to political party seeking to defend mail-in ballot rules); *see also Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771, 2020 U.S. Dist. LEXIS 228591, at *4 (E.D. Wis. Dec. 6, 2020) (denying Democratic National Committee's request to intervene as defendant in election case because the state defendants adequately represented the DNC's interests in certifying the election). Proposed Intervenors' cases are thus not relevant here.

Even if the Proposed Intervenors could be seen to have a direct interest, they have not shown that they are "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a)(2). Like the proposed intervenors in *Flying J*, this requirement "presents a greater obstacle" to the Proposed Intervenors because there is "nothing to prevent" the Proposed Intervenors from suing on their own behalf. 578 F.3d at 572-73; *see also Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) (intervenor's interest not impaired where he "remains free to initiate his own suit"). "'[I]mpairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982); *see also IWork Software v. Corp. Express, Inc.*, No. 02 C 6355, 2003 U.S. Dist. LEXIS 19686, at *12 (N.D. Ill. Oct. 31, 2003) ("Impairment depends upon whether the rights of a proposed intervenor would be foreclosed by an adverse decision in the case in which it seeks to intervene.").

---

where it had already been allowed to intervene in two closely related cases); *Swenson v. Bostelmann*, No. 20-cv-459, 2020 U.S. Dist. LEXIS 110008, at *3 (W.D. Wis. June 23, 2020) (same).

Here, a decision in Defendants' favor would not have a res judicata or even collateral estoppel effect on any suit brought by the Proposed Intervenors. *Flying J*, 578 F.3d at 572-73. And while "concern with the stare decisis effect of a decision" may sometimes justify intervention, "the decision of a district court has no authority as precedent." *Id*. Moreover, a decision by this Court that the Plaintiffs' claims are moot or nonjusticiable, which seems to be the Proposed Intervenors' primary concern (*see* Dkt. 71 at 6-7, 13), would not have any precedential effect on the merits of Proposed Intervenors's challenge to the dual circulator provision.

Indeed, Proposed Intervenors' only argument that their interests would be impaired by a decision in this case is that they will be "subjected to the same justiciability arguments [as the Plaintiffs] should they have to expend time and resources to initiate a separate lawsuit." *Id*. at 7. But this is not a proper basis for intervention as of right (or permissive intervention, for that matter). If the Court lacks jurisdiction over a matter because the Plaintiffs' claims are moot or nonjusticiable, then a new set of plaintiffs should not be allowed to hijack the case for their own ends.

### B. The Proposed Intervenors' Interests are Adequately Represented by Plaintiffs.

A proposed intervenor must also show that the existing parties cannot adequately represent his interests. *Bost*, 75 F.4th at 686. Proposed Intervenors argue that this requirement "present[s] . . . only a minimal challenge" (Dkt. 71 at 13, *quoting Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022)), but this statement misstates both *Berger* and the applicable standard. *See Berger*, 142 S. Ct. 2191, 2203 ("In some cases, too, this Court has described the Rule's test as presenting proposed intervenors with only a minimal challenge."). In *Bost*, which was decided after *Berger*, the Seventh Circuit held that where the prospective intervenor and the named party have "the same goal," the proposed intervenor must "point[] to 'some conflict'

between itself and the existing party." 75 F.4th at 688; *see also Meridian Homes., 683 F.2d at 205* ("[W]here . . . the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists."). Even under the more lenient default rule, the proposed intervenor must show that there "may be" a conflict of interest between itself and the plaintiffs. *Bost*, 75 F.4th at 690. "Absent conflict between the parties' objectives, no reason to intervene exists." *IWork Software*, 2003 U.S. Dist. LEXIS 19686, at *13, *citing Meridian Homes,* 683 F.2d at 205.

Here, the Proposed Intervenors have the "same goal" as the Plaintiffs—the invalidation of the dual circulator provision. Dkt. 71 at 1, 5, 6. Thus, the Proposed Intervenors must point to "some conflict" between them and Plaintiffs. But here, Proposed Intervenors fail to identify any actual conflict between them and Plaintiffs, or even the possibility of conflict. Instead, Proposed Intervenors argue that their interests "cannot be adequately represented by Plaintiffs" because the "Plaintiffs are procedurally hamstrung" by the fact that their claims are either moot or nonjusticiable. *Id*. at 6-7. But the fact that Plaintiffs are not likely to prevail on their claims does not establish that there is a conflict that would allow the Proposed Intervenors to intervene here.

And even if the Proposed Intervenors were "otherwise entitled to intervene in this case, they surely may not do so 'by and through' Plaintiffs' own attorney." *Dumanian v. Schwartz*, No. 19 C 6771, 2020 U.S. Dist. LEXIS 247574, at *8-9 (N.D. Ill. Dec. 10, 2020). As Judge Lee explained in *Dumanian*, if the Proposed Intervenors' interests truly conflict with the Plaintiffs' interest, "it follows that their interests could not be adequately represented by the same attorney who represents [Plaintiffs'] conflicting interests." *Id*. "To the contrary, the same attorney could adequately represent the interests of both groups only if those interests were aligned—a circumstance that would likewise defeat the right to intervene." *Id*.; *see also Union Cent. Life Ins.*

10

*Co. v. Hamilton Steel Prods. Inc*., 374 F.2d 820, 823 (7th Cir. 1967) ("Inadequate representation can hardly be claimed where the same attorneys represent the [party] and the proposed intervenor.").[4] Here, the same attorneys represent both the Plaintiffs and the Proposed Intervenors, reinforcing the conclusion that their interests are aligned and that the Proposed Intervenors have no right to intervene.

## II.     The Proposed Intervenors Should Not Be Allowed to Intervene Permissively.

For the same reasons, the Proposed Intervenors' attempt at permissive intervention should also be rejected. As discussed above, the Proposed Intervenors do not have "a claim or defense that shares with the main action a common question of law or fact" (Fed. R. Civ. 24(b)(1)(B)), because they are attempting to introduce new facts and new legal theories into the case. Because they make new legal arguments based on an entirely new set of facts, they are not similarly situated to the Plaintiffs.

In all events, the Court should exercise its discretion to deny intervention. "Whether to allow permissive intervention is a highly discretionary decision" that "leaves the district court with ample authority to manage the litigation before it." *Bost*, 75 F.4th at 690-91. The "only *required* considerations by the district court are undue delay and prejudice to the rights of the original

---

[4] *See also Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) ("Here petitioner's interests in defeating foreclosure are adequately represented by the receiver, who has the same interests and who is represented by petitioner's own counsel."); *OsteoMed LLC v. Stryker Corp.*, No. 20-cv-6821, 2021 U.S. Dist. LEXIS 93293, at *9 (N.D. Ill. May 17, 2021) ("The Court fails to see any potential conflicts, either. After all, the parties share a legal team, which suggests they believe their interests are aligned."); *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 962 (E.D. Wis. 2009) (noting that the parties "share the same counsel" in finding no conflict and denying motion to intervene); *ABS Global, Inc. v. Inguran, LLC*, No. 14-cv-503, 2015 U.S. Dist. LEXIS 42063, 2015 WL 1486647, at *4 (W.D. Wis. 2015) ("Here, XY and Inguran share essentially the same goal. . . This conclusion is further strengthened by the fact that Inguran and XY are represented by the same counsel, strongly suggesting that there is no real (or even foreseeable) conflict of interests between Inguran and its wholly-owned subsidiary XY.").

parties" (*id*. at 691 (emphasis in original), and as discussed above those factors weigh heavily against allowing intervention here.

As this Court observed in *Bost*, when considering whether to allow permissive intervention, "district courts may consider a wide variety of factors, including interests of case management and the effect of intervention on the timely resolution of the action." 2022 U.S. Dist. LEXIS 185464, at \*20. And while courts "may not deny permissive intervention solely because a proposed intervenor failed to meet the requirements for intervention as of right under Rule 24(a)," those same factors "may be considered in when considering a request to intervene by permission." *Id*.

Here, as in *Bost*, "equitable considerations weigh against granting the motion for permissive intervention." *Id*. at 20-21. As discussed above, all of the factors for intervention as of right weigh against intervention; these factors, "although not controlling, are nonetheless instructive." *Id*. at 21. And there is no question that allowing permissive intervention "would likely further impede the timely resolution of the action." *Id*. As the Seventh Circuit observed when affirming this Court's decision to deny intervention by right and by permission in *Bost*:

> There are many sound reasons to deny a motion for permissive intervention . . . . [A]dding parties is not costless, and time is not the only payment:
>
> Increasing the number of parties to a suit can make the suit unwieldy. . . . An intervenor acquires the rights of a party. He can continue the litigation even if the party on whose side he intervened is eager to settle. This blocking right is appropriate if that party cannot be considered an adequate representative of the intervenor's interests, but not otherwise.

75 F.4th at 691 (quotation omitted). Proposed Intervenors have not put forth any solid reasons to divert this case for their own ends, and their motion should be denied accordingly.

## CONCLUSION

For these reasons, Defendants respectfully request that this Honorable Court deny the Independence Party, Gary Pierce, and Alejandro Cabrera's Petition to Intervene.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

/s/ *Sarah H. Newman*
Sarah H. Newman
Lee Stark
Assistant Attorneys General
Office of the Illinois Attorney General
Government Representation Division
General Law Bureau
115 South LaSalle Street
Chicago, Illinois 60603
312-814-6131
224-278-8343
sarah.newman@ilag.gov
lee.stark@ilag.gov

*Counsel for Defendants*
*the Illinois State Board of Elections and*
*Bernadette Matthews*