**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TEAM KENNEDY, LIBERTARIAN PARTY OF ILLINOIS, ROBERT F. KENNEDY JR., WILLIAM REDPATH, and ANGEL OAKLEY | ) ) ) | |
| | ) | No. 24-cv-7027 |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | Hon. John Kness |
| ILLINOIS STATE BOARD OF ELECTIONS, and, BERNADETTE MATTHEWS, in her official capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) | Magistrate Judge Jeannice Appenteng |
| | ) | |
| Defendants. | ) | |
| INDEPENDENCE PARTY, GARY PIERCE, and ALEJANDRO CABRERA, | ) ) | |
| | ) | |
| Intervenor-Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, and, BERNADETTE MATTHEWS, in her official capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

### <u>Reply in Support of Motion to Intervene as Plaintiffs by Gary Pierce, Alejandro Cabrera and the Independence Party</u>

Christopher D. Kruger
Law Office of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201
847.420.1763
chris@kruger-law.com

Andrew Finko
875 N. Michigan Ave.
Suite 3100
Chicago, IL 60611
(773) 480-0616
Finkolaw@Fastmail.FM

Proposed Intervenors, through their attorneys, file their Reply in support of their motion to intervene, and respectfully request that their motion be granted.

### Introduction

At issue is not a procedural requirement that assists election authorities in the administration of elections, nor a qualification for a candidate to gain ballot access, but rather, an overt restriction upon the content of speech. A person that has circulated a petition to promote an established party's *selection* (rather than *election*) of its candidates, is later prohibited from exercising their First Amendment speech to promote an independent or new party ("I+NP") candidate for actual ballot placement upon the November election ballot.

Plaintiffs and proposed intervenors undeniably have the same goal. The conflict between them concerns how they are temporally-situated within different election cycles. But, according to the defendants, now is not the time to decide whether the State's "dual circulator" restriction violates the First Amendment as interpreted by *Buckley v. Valeo*, *Meyer v. Grant*, *Buckley v. American Constitutional Law Foundation,* and *Citizens United v. FEC*[1].

But two years ago wasn't a good time either for review of this issue, according to the defendants, even though a presidential candidate and his electors fought for four months against an unprecedented objection campaign, incurring considerable expense and immeasurable lost opportunities. The original plaintiffs fought for months only to have their claims, according to defendants, mooted by the passage of the election.

---

[1] *Buckley v. Valeo*, 424 U.S. 1 (1976); *Meyer v. Grant*, 486 U.S. 414 (1988); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999); *Citizens United v. FEC*, 558 U.S. 310 (2010).

1

The presidential candidate and his campaign attained the Pyrrhic victory of his name being placed on the ballot after the candidate had already been forced to drop out of the race, largely because of a multi-state campaign to impede his ballot access. Now that proposed intervenors supply the necessary cure to the justiciability issues, but defendants want another, different lawsuit so they can refile the same briefs, and again argue mootness. And filing a separate lawsuit is one type of impediment that Rule 24 was created to avoid.

Defendants have been creative in raising issues within a single legal argument in the complaints – namely, whether the "dual circulator" restriction upon speech is constitutional. Defendants exaggerate minutiae, comparing restatements of the same problems articulated by the original plaintiffs and proposed intervenors in their respective complaints and declarations. However, the gist of the problem is that the section 10-4 circulator restriction is an impermissible restraint on speech that is not necessary for the administration of elections, since Illinois has never had *too many* I+NP candidates reaching the ballot.

Robert F. Kennedy, Jr., the Libertarian Party, Angel Oakley as candidate for presidential elector and congress, Gary Pierce as candidate for governor, Alejandro Cabrara as candidate for lieutenant governor, as well as the aspirant Independence Party all agree that the dual circulator ban burdens their First Amendment rights. Despite all the hand-wringing in the Response, this issue is not that complicated. There is not a nickel's worth of substantive difference between the claims raised by the plaintiffs and the proposed intervenors, as it is all in pursuit of the same goal.

2

<u>Under *Bost v. Illinois State Board Of Elections*</u>
<u>the Proposed Intervenors Have a Right to Intervene</u>

**Intervention as of Right**: Rule 24(a)(2) requires the court to allow intervention if the would-be intervenor can prove: (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action. *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 686 (7th Cir. 2023); *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019).

**Timeliness.** In *Bost*, this District Court found that the intervention was untimely because it would detract from deciding the merits of that timebound case. *Bost v. Ill. State Bd. of Elections*, No. 22-cv-02754, 2022 U.S. Dist. LEXIS 185464, at *21 (N.D. Ill. Oct. 11, 2022) (Kness, J.), aff'd, 75 F.4th 682 (7th Cir. 2023). In this case however, the inverse applies; if proposed plaintiffs cannot intervene, they will be trapped in the same ripeness-mootness cycle foisted on the original plaintiffs.

In addition, in *Flying J*, infra, the intervenors "just wanted" a single legal issue settled. The Seventh Circuit held that their intervention was timely even after final judgment, and allowed participation on the merits, because they did not need to take evidence to decide the predominate issue: the preemption of a state law by the Sherman Act.  In this case, as in *Flying J*, Intervenors seek resolution of a single legal issue – a decision upon the validity of the dual circulator ban.

Intervenors herein learned of the dual circulator restriction after petitioning commenced February 25, 2026, which they attempted to navigate, but realized the court's determination would be needed. Within a little over 30 days, Intervenors filed their motion to intervene, with a proposed intervenors' complaint, and their

3

proposed motion for preliminary injunction. This timeframe is not unreasonable to gather necessary facts, create declarations, research the issues, and draft the corresponding filings.

Even so, "when intervention as of right is sought, because 'the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.' " *Lopez-Aguilar v. Marion County Sheriff's Dept.*, 924 F.3d 375, 388-389 (7th Cir. 2019) ("Even if the State moved to intervene in July 2017, after the parties proposed the Stipulated Judgment, rather than in December 2017, after the State learned that the district court had entered final judgment, the burden to the parties of reopening the litigation and resuming settlement negotiations would have been the same."). See also *Nissei Sangyo America, Ltd. v. US*, 31 F 3d 435 (7th Cir. 1994) (motion to intervene filed three months after knowledge of lawsuit was not unreasonable).

Intervenors would be seriously harmed through the potential denial of their First Amendment rights, which should not lightly be denied, particularly where "legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment." *Buckley v. Valeo*, 424 U.S. at 50. See also, *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253 ("It is well-settled that Illinois Courts recognize a strong policy interest in favor of ballot access. The public policy of this state is to provide legitimate candidates for office with access to the ballot, and therefore the citizenry an enhanced ability to participate."); *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill.App.3d 69, 71, 638 N.E.2d 782 (2nd Dist. 1994), citing *Welch v. Johnson*, 147 Ill.2d 40, 56, 588 N.E.2d 1119 (1992).

**Unique Interests.** The Seventh Circuit in *Bost* describes the interest requirement as "unique," following *Planned Parenthood* and *Keith*, and as "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." The proposed intervenors' unique, distinctive right is the right to be free from procedural mootness and justiciability arguments that are routinely asserted by the Defendants. Also unique to proposed intervenors is the fact that they have already circulated on behalf of established party candidates during the primary season and are now thus barred from circulating for themselves now. See Pierce & Cabrera Declarations.

In addition, proposed intervenors have the unique right to promote their candidacies without a procedural fog over their campaign; the "conflict" between the original plaintiffs and proposed intervenors being that of running an ongoing campaign as opposed to having been damaged in the past. Proposed intervenors are thus uniquely situated apart from the original plaintiffs by virtue of their position within, instead of outside, the current election cycle. *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019) (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)).

**Impairment/Impediment.** The proposed intervenors' impairment or impediment is that they will not be able to enjoin Defendants from enforcing the dual circulator restriction, which is actually a partisan "lock-in" that prohibits speech during the second part of the election cycle. This is a ban which most certainly violates the First Amendment as interpreted by Supreme Court jurisprudence, and would in all likelihood then be subjected to defendants' same procedural justiciability arguments. This issue has thus far been evading review.

**Adequacy.** Adequate representation in this case is closely related to the uniqueness of proposed intervenors' temporal situs, as the original plaintiffs cannot adequately represent the intervenors' interests if they are dismissed for procedural reasons. As for the tiered test inquiry, the original plaintiffs and proposed intervenors agree that the dual circulator ban violates their First Amendment rights. There is an impermissible partisan "lock-in" during established party candidate selection, that then restricts their speech – prohibits them from circulating and promoting I+NP candidates. Circulation of ballot access petitions constitutes "core political speech" for which First Amendment protection is at its zenith. *Meyer v. Grant*, 486 U.S. 414 (1988). The restriction is an impermissible content-based restriction, directly contrary to the First Amendment. Intervenors are currently circulating, and are currently being restricted in their speech.

If that is construed as the "same goal," then, one can argue, the intermediate level applies. *Bost,* 75 F.4th 682, 688 (7th Cir. 2024).

If, on the other hand, one posits, as the *Bost* panel did, taking from the *Driftless* case, "it is not enough that they seek the same outcome in the case," and that intervenors have "the same goal" only where the interests are genuinely "identical," then one can distinguish between the original plaintiffs seeking redress for a lost campaign and the intervenors seeking immediate relief in an ongoing one. *Id.* at 689, discussing *Driftless Area Land Conservancy v. Huebsch,* 969 F.3d 742, 746 (7th Cir. 2020).

If proposed intervenors and original plaintiffs do not share the same goal, i.e., that of a past campaign versus that of an ongoing one, then the lenient, default rule applies. *Bost*, supra, 75 F.4th at 689. Further, according to *Bost*'s citing of *City of*

6

*Chicago v. Fed. Emergency Mgmt. Agency ("FEMA")*, 660 F.3d 980, 985 (7th Cir. 2011), litigation failures or shortcomings on behalf of original parties can satisfy the lenient default standard. One could view any justiciability frailties as such a "failure," although the original plaintiffs persist and insist that the mootness doctrine is disfavored when applied to time-bound election cycles.

<u>**Mootness**</u>

The defendants' argument that the original action is moot and no longer justiciable, if accepted by the court, flies in the face of most meaningful election cases decided since *Williams v. Rhodes*: "These [ballot access] cases do raise a justiciable controversy under the Constitution, and cannot be relegated to the political arena." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).[2] In *Anderson v. Celebrezze*, the Supreme Court saw fit to address mootness in a mere footnote. *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, fn. 3 (citing *Storer v. Brown*).

Now that the proposed intervenors supply the justiciability that the defendants assert has been previously lacking, defendants cite to FCRA and truckstop cases. Like an avocado, which is either never quite ripe, or is overripe, there is never a good time to have the requisite conversation: can section 10-4's dual circulator ban be squared with *Meyer v. Grant* and the rest of the *Buckley v. Valeo* line?

---

2 According to the Supreme Court, a mootness finding is particularly inappropriate in election cases involving, as in this case, "...a matter of statutory prescription, as was the case in other election decisions on which appellant relies, e. g., *Storer v. Brown*, 415 U.S., at 737 n. 8, 94 S.Ct., at 1282; *Moore v. Ogilvie*, supra, 394 U.S. at 816, 89 S.Ct. at 1494." See *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983 (1979).

### *Flying J* Decision Supports Proposed Intervenors' Right to Intervene

In *Flying J*, a wholesaler of gasoline brought suit to enjoin the enforcement of a state law as preempted under the Sherman Act. The district court agreed that it was preempted and issued an injunction, at which point the State conceded the case. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009). <u>After</u> the case was decided (unlike the matter before this honorable court), and the State's decision not to appeal, a group of gasoline <u>retailers,</u> that were supporters of the statute, moved to intervene. Thus the sole issue in *Flying J* was a legal one: did the Sherman Act preempt the Wisconsin Uniform Sales Act, Wis. Stat. § 100.30? In *Flying J*, as in this case, a single legal issue predominated.

What the Response leaves out in its discussion of *Flying J* is the fact that the intervenors ultimately <u>won</u>. Though the retailers' motion to intervene was denied in the district court, they were nonetheless allowed to brief the merits before the Circuit of Appeals for the Seventh Circuit. The court of appeals explained: "And so to save time we shall…treat the intervenor as the appellant from the judgment on the merits and direct briefing to proceed in the usual manner, except that the appeal will be decided by this panel. (Indeed, we cannot understand why the parties did not brief the merits.)" (internal citation omitted). *Flying J,* 578 F. 3d at 574.

After briefing the merits, the gasoline retailers won. *Flying Inc. v. Van Hollen*, 621 F.3d 658 (7th Cir. 2010) ("*Flying J II*"). The Seventh Circuit found "[b]ecause we find that the provisions are not preempted by the Sherman Act, the district court's grant of Flying J's motion for summary judgment is reversed, the permanent injunction is dissolved, and the case is remanded to the district court with directions to enter judgment in favor of Defendants." In this case, as in *Flying J*, the

8

proposed intervenors cannot count on the case being heard on the merits in time to redress their claim.  So who wouldn't want to save time by addressing the merits?

The Seventh Circuit's discussion of Rule 24 makes it clear that *Flying J* supports the proposed intervenors' request to intervene, and obtain a decision on the merits.

1) **Most lawsuits are simply monetary, which is not the case here; hence intervenors have more of an "interest."**  The First Amendment interests of proposed intervenors are distinct from monetary interests, as discussed in Flying J:

> Rule 24(a)(2) requires that the applicant claim "an interest relating to the property or transaction that is the subject of the action." "Interest" is not defined, but the case law makes clear that more than the minimum Article III interest is required. Cases say for example that a mere 'economic interest' is not enough. While that is a confusing formulation – **most civil litigation is based on nothing more than an "economic interest"** – all that the cases mean is that the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit — maybe you're a creditor of one of them — does not entitle you to intervene in their suit.

*Flying J*, 578 F. 3d at 571. (Emphasis added).

The Response's isolated invocation of the word "benefit" does not mention that the quoted sentence was referring to a "benefit" in the pecuniary sense. Clearly the proposed intervenors have a lot more than a mere economic interest, as "[t]hose who spend untold time and resources seeking to claim the right to voice the will of the people have 'an undeniably different—and more particularized— 'interest' in knowing what that will is." *Bost v Illinois State Board of Elections,* 607 U.S. __,  146 S.Ct. 513 (2026) (slip opinion at 5), citing *Hotze v. Hudspeth,* 16 F. 4th 1121, 1126 (CA5 2021) (Oldham, J., dissenting). You cannot know what the voters' will is if the candidate cannot get on the ballot – and ballot access can only be obtained through circulation of petitions. See also, *Meyer v. Grant*, 486 U.S. 414 (1988).

2) **An "interest" may be imputed when the applicant's claim is founded on the same statute as the underlying case.** "Another dimension of the 'interest' required for intervention as a matter of right, also borrowed from (though not necessarily identical to) the prudential as distinct from the Article III concept of standing, is that the <u>suitor be someone whom the law on which his claim is founded</u> was intended to protect." *Flying J.*, 578 F.3d at 572. While in this case the proposed intervenors' interests are inverse to the intervenors in *Flying J*, the intervenors' claims (and right to ballot access) are unquestionably <u>based upon</u> that law, and so they have a right to intervene.

3) **Intervention can be timely even in the face of a *fait accompli*.** "Nor do we think the association's motion to intervene, even though not filed until the district judge had entered his final judgment, was untimely — assuming that all the association wants is to take an appeal (a question we discuss below, and answer in the affirmative)." *Id.* Here, where the court hasn't rendered judgment (and no discovery started), it remains timely, as the constitutional challenge is ripe for decision, particularly since petitioning is still underway. All the original plaintiffs and the proposed intervenors want is a decision on the merits. Fed.R.Civ.P. Rule 1.

4) **Impending adverse decisions are grounds for intervention**: The issue was discussed in *Flying J* as follows:

> It is true that concern with the *stare decisis* effect of a decision can be a ground for intervention, because courts are reluctant to overrule a precedent. But the decision of a district court has no authority as precedent. And unless intervention is permitted, there is no way in which the district court's decision in this case could be appealed and thus, if affirmed, give rise to a precedent that would impede the association's ability to overturn the invalidation of the [statute] in another suit.

*Id.* at 572.

10

In this time-sensitive case, if intervention is denied, a separate case and separate appeal will push the proposed intervenors into yet another election cycle and they will have to contend with the same justiciability/mootness arguments, and the dual circulator ban will have successfully evaded review twice in a single lawsuit. Intervenors respectfully request this honorable court address this matter squarely, and provide a decision on the merits.

5) **Intervenors should not be forced to "start over" simply because of the procedural posture.** As addressed in *Flying J*:

> Still, to make the association start over, when all it really seeks by way of intervention ....is an opportunity to litigate an appeal, would impose substantial inconvenience on the association with no offsetting gain that we can see. That inconvenience is an "impediment" that can be removed, without prejudice to its opponent, by allowing intervention.

*Id.* at 573. Here all the intervenors are seeking is an opportunity for the court to reach the merits, expressly because starting over is an impediment "...with no offsetting gain." There is no prejudice to Defendants to allowing intervention, and a decision upon the merits. This court should permit intervention and allow this case to reach the merits of intervenors' First Amendment claims. If proposed intervenors had filed their motion <u>after</u> the motion to dismiss was decided, defendants would no doubt mount additional waiver and timeliness arguments.

<u>**"Some Conflict"**</u>

The Response points out that for intervention as of right, in order to show inadequate representation under either tier, proposed intervenors must point to some "conflict." Assuming without conceding that the intermediate standard applies, proposed intervenors meet that burden. In fact, given that the intervenors

11

allegations are antagonistic to the State (the opposite of the DPI's motion to intervene in *Bost*), the proposed intervenors should be granted leniency.

"In *Bost*, which was decided after *Berger*, the Seventh Circuit held that where the prospective intervenor and the named party have 'the same goal,' the proposed intervenor must 'point[] to 'some conflict' between itself and the existing party." Response at fn. 2, 9-10 quoting *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022), and *Bost,* 75 F.4th 682, 685. The Seventh Circuit in *Bost* utilized the lenient standard and characterized its holding thusly: "Because DPI failed to point to any reason that the state's representation of its interests 'may be' inadequate, and because the district court's focus on public time and resources over DPI's individual interests was not an abuse of its discretion, we affirm." *Bost*, 75 F.4th 682.

In this case, the "conflict," is the justiciability issue. It is the elephant in the room, namely the defendants' temporal-based arguments that some plaintiffs are too late, some are too early, none just rightly situated-temporally. This conflict is the reason that plaintiffs cannot adequately represent the intervenors, because if original plaintiffs are dismissed on procedural grounds, intervenors would have to, in the words of *Flying J,* "start over" and be trapped in the vicious cycle.

**Permissive Intervention.** Rule 24(b)(1)(B) gives the district court the power to allow anyone to intervene who has a claim or defense that they share with the main action over a common question of law or fact. The only required considerations by the district court are undue delay and prejudice to the rights of the original parties. *Bost,* supra, 75 F.4th 691; *Planned Parenthood*, supra, 942 F.3d at 803.

In *Bost*, the District Court denied permissive intervention based on timeliness. In *Flying J,* the Seventh Circuit noted that neither the impairment nor

the interest requirement is repeated in the subpart of Rule 24 that governs

permissive intervention. All that is required is that the applicant's claim or defense

and the main action have a question of law or fact in common. In *Flying J*, the court

concluded after probing the case, as follows:

> ...[T]hat [common question of law or fact] requirement is satisfied because the association wants to present the same defense that the defendants presented. Like anyone who wants to maintain an action in federal court, the association has to have standing in the Article III sense—but it does.
>
> The motion to intervene has to be timely, but at argument we extracted from the association a reluctant acknowledgment that all it really wants is a ruling by us (for there is no point in its seeking reconsideration by the district court on the identical record) that the Unfair Sales Act is not preempted. The association does not want to present evidence—if it did, its Rule 24(b) claim would be untimely for the same reason that, on the same assumption, its Rule 24(a) claim would be.

*Flying J. v JB Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009).

Similarly, the proposed intervenors do not need to present additional

evidence for this honorable Court to decide whether the dual circulator ban is

unconstitutional, or at least to assess the likelihood of success on the merits for

purposes of enjoining enforcement of the unconstitutional statute.

### Conclusion

The illegality of the dual circulator ban is blatant. It has been evident since

June 6, 1988. *Meyer*, 486 U.S. 414. If there was any lingering doubt as to its legality

after *Meyer*, those doubts were resolved on January 12, 1999. *Buckley v. American*

*Const. Law Foundation, Inc*., 525 U.S. 182. The line of Supreme Court decisions

supporting intervenors' First Amendment rights continues through *Citizens United*

*v. FEC*, 558 U.S. 310 (2010) and *Chiles v. Salazar*, 607 U.S. __ (2026).

The Defendants' justiciability arguments were discussed in *Sosna v. Iowa*.

"[T]he case before us is one in which state officials will undoubtedly continue to

13

enforce the challenged statute and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion." *Sosna v. Iowa*, 419 U.S. 393, 400 (1975), citing *Dunn v. Blumstein*, 405 U. S. 330 (1972).

"Residents... are aggrieved by an allegedly unconstitutional statute enforced by state officials. We believe that a case such as this, in which, as in *Dunn*, the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." *Sosna,* 419 U.S. at 401 citing *Dunn,* supra, and *Rosario v. Rockefeller*, 410 U.S. 752, 410 U.S. 756 n. 5 (1973).

Intervenors respectfully request that their motion to intervene is allowed, so they may obtain a decision on their preliminary injunction in advance of the Defendants' electoral board proceedings in June 2026. At those proceedings, Defendants would enforce the dual circulator restriction, and deny entire sheets of Illinois voters their First Amendment right to organize and support their right to form a new political party.

The right of citizens to form a political party is a fundamental right of the First Amendment. Since circulation is "core political speech" it cannot be restricted. *Meyer v. Grant*, supra. "Representative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views. . . . Consistent with this tradition, the Court has recognized that the First Amendment protects 'the freedom to join together in furtherance of common political beliefs.'"

14

*California Democratic Party v. Jones,* 530 U.S. 567, 574, 120 S. Ct. 2402 (2000), citing

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214-215, 107 S. Ct. 544 (1986).

Accordingly, "[r]estrictions upon the access of political parties to the ballot

impinge upon the rights of individuals to associate for political purposes, as well as

the rights of qualified voters to cast their votes effectively, and may not survive

scrutiny under the First and Fourteenth Amendments." *Munro v. Socialist Workers*

*Party*, 479 U.S. 189, 193, 107 S. Ct. 533 (1986), citing *Williams v. Rhodes*, 393 U.S. 23,

30, 89 S. Ct. 5, 10 (1968).

Wherefore, Proposed Intervenors respectfully request that their motion to

intervene is granted, and leave given to file their proposed Intervenors' Complaint

and motion for preliminary injunction.

Respectfully submitted:
 /s/ Christopher D. Kruger

Christopher D. Kruger
Law Office of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201
847.420.1763
chris@kruger-law.com

Andrew Finko
875 N. Michigan Ave.
Suite 3100
Chicago, IL 60611
(773) 480-0616
Finkolaw@Fastmail.FM

**Certificate of Service**

I, the undersigned attorney, certify that on April 30, 2026 the undersigned

electronically filed the foregoing filing with the Clerk of the District Court,

Northern District of Illinois, Eastern Division, using the CM/ECF system, which

sends an email with a download link of this filing to all counsel of record.

/s/  Andrew Finko

15